

**FILED**

MAY 3 0 2024 JXM

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JACQUELINE A. WATKINS, | ) | |
| | ) | **1:24-cv-04467** |
| Plaintiff, | ) | **Judge Martha M. Pacold** |
| | ) | **Magistrate Judge Young B. Kim** |
| vs. | ) | **RANDOM/CAT. 2** |
| | ) | |
| The CITY OF CHICAGO, Illinois, a municipal | ) | **Jury Trial Demanded** |
| Corporation, and Chicago Police Officers | ) | |
| Chief of Detectives Antoinette URSITTI, | ) | |
| Chief of the Bureau of Internal Affairs | ) | |
| Yolanda TALLEY, Chief Karen KONOW, | ) | |
| Deputy Director Tina SKAHILL, Sgt. Keisha | ) | |
| FRIERSON, and Sgt. Christine OTRUBA | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, Pro Se, JACQUELINE A. WATKINS, hereby makes the following complaint against

Defendants the CITY OF CHICAGO ("Defendant CITY") and Chicago Police Chief of Detectives,

ANTOINETTE URSITTI, Bureau of Internal Affairs Chief, YOLANDA TALLEY, Chief KAREN

KONOW, Deputy Director TINA SKAHILL, Sgt. KEISHA FRIERSON, and Sgt. CHRISTINE

OTRUBA, ("Defendants URSITTI, TALLEY, KONOW, SKAHILL, FRIERSON, and OTRUBA) in their

official and individual capacities: In support of this complaint, Plaintiff states the following:

### NATURE OF ACTION

1. Plaintiff, Jacqueline Watkins began her employment with the Chicago Police Department on July

12, 1999. Officer Watkins, initially served as a beat patrol officer for 18 years before being granted her

dream position, assigned to the Crisis Intervention Team (CIT/ De-escalation) unit in 2017. Plaintiff job

description included responding to critical mental health calls and teaching de-escalation skills to police

officers, SWAT teams, supervisors, and civilians. Plaintiff performed her job in an excellent manner and

served the Crisis Intervention Unit (CIT) without incident until she reported her coworker Officer Joaquin Rodgers bullying and retaliation. The retaliation and harassment against Plaintiff immediately began after Plaintiff reported officer Joaquin Rodgers for verbally attacking her in the workplace. In retaliation for reporting the verbal attack coupled with retaliation due to Plaintiff then ongoing Federal Discrimination lawsuit and initiating a complaint to COPA (Civilian Office of Police accountability) that transferred the CR (Complaint Register) to the Bureau of Internal Affairs (BIA), Defendants retaliated and harassed Plaintiff to such unbearable extreme, causing her health to deteriorate leading to her constructive discharge on August 15, 2023. Plaintiff retired on medical stress leave on orders by her Clinical Therapist. Officer Watkins holds two master's degrees, and Defendants refused to honor Plaintiffs' clinical therapist request to transfer Plaintiff to a unit away from the hostile environment, leaving Officer Watkins with only option to return to patrol. Defendants' actions reflect a systemic practice, custom, and policy of retaliating against employees who exercise their First Amendment rights and report misconduct by fellow police officers. The catalyst of the retaliation stemmed from Plaintiffs' then ongoing Federal Discrimination lawsuit based on sex and race in that on or about March 15, 2017, she engaged in a protected activity, case #17cv02028, on or about May 5, 2020, engaged in a protected activity, case #20cv1750, and filing on or about May 30, 2023, she engaged in a protected activity with the United States Supreme Court, case #22-972. Defendants were informed of the harassment, coverup, retaliation, and took no action to prevent the harassment and retaliation but condoned it. Plaintiff filed three (3) separate CRs (complaint registers; #2019-0005248, #2020-0005000, & #2023-0001240) that went nowhere. The harassment, retaliation, and intimidation continue against Plaintiff long after her Constructive Discharge, as Plaintiff received two certified letters from BIA, dated April 17, 2024, and April 23, 2024.

## **JURISDICTION AND VENUE**

2.      The claims against Defendant are for harassment, retaliation, hostile work environment, and constructive discharge pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

3.      This case is brought pursuant to 42 U.S.C. §1983 and 740 ILCS 174/15(b) and to redress

the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution and the Illinois Whistleblower Act.

4.      This Court has jurisdiction of the action pursuant to 28 U.S.C. §§1331, 1343, and 1367.

5.      Venue is proper under 28 U.S.C. §1391(b). All parties reside in this judicial district and the events giving rise to the claims asserted in this complaint occurred within this district.

## PARTIES

6.      Plaintiff, Jacqueline WATKINS is a female, black, 50-year-old, resident of Chicago, Illinois, former Chicago Police Officer, a former employee of Defendant City of Chicago.

7.      Defendant Chief of Detectives Antoinette URSITTI is or was employed by the City of Chicago and is being sued in her individual capacity.

8.      Defendant Chief of Bureau of Internal Affairs Yolanda TALLEY is or was employed by the City of Chicago and is being sued in her individual capacity.

9.      Defendant Chief Karen Konow is or was employed by the City of Chicago and is being sued in her individual capacity.

10.     Defendant Deputy Director Tina Skahill is or was employed by the City of Chicago and is being sued in her individual capacity.

11.     Defendant BIA Sergeant of Police Keisha Frierson is or was employed by the City of Chicago and is being sued in her individual capacity.

12.     Defendant BIA Sergeant of Police Christine Otruba is or was employed by the City of Chicago and is being sued in her individual capacity.

13.     Defendant CITY is a municipal corporation, duly incorporated under the laws of the State of Illinois, and at all relevant times, was the employer and principal of Defendants Antoinette URSITTI, Yolanda TALLEY, Karen KONOW, Tina SKAHILL, Keisha FRIERSON, and Christine OTRUBA. Should Plaintiff prevail on her federal claim, Defendant CITY must indemnify Defendant, URSITTI, TALLEY, KONOW, SKAHILL, FRIERSON, and OTRUBA pursuant to 735 ILCS 10/9-102. Defendants were acting within the scope of their employment and pursuant to a custom, policy, and practice of

violating individuals' rights to freedom of speech under the First Amendment to the Constitution of the United States.

14. Defendant CITY was Plaintiff's employer as defined under the Illinois Whistleblower Act.

15. Defendant City of Chicago is a municipal entity responsible for the oversight and administration of the Chicago Police Department.

## Exhaustion of Administrative Remedies

16. Plaintiff filed a timely Charge of Discrimination, harassment, retaliation, and constructive discharge on March 7, 2024.

17. Plaintiff received a Determination and Notice of Rights letter from the EEOC (hereafter a "Right to Sue Letter") within the past 90 days, EEOC NO. 440-2024-04416.

18. Accordingly, this lawsuit is timely filed.

## FACTS

### The Career of Jacqueline WATKINS

19. Plaintiff, Jacqueline WATKINS served the Chicago Police Department for 24 years upon being constructively discharged on August 15, 2023.

20. Plaintiff is 50 years old.

21. Plaintiff has two master's degrees: Psychology and a MBA with a concentration in Training & Performance management.

22. Plaintiff became a Chicago Police Officer on July 12, 1999.

23. For the first 18 years of Plaintiff's career with the Chicago Police Department ("CPD"), she worked in the patrol division in the 22nd & 4th district.

24. Plaintiff worked in the 4th district for 7 years, and the 22nd District for 11 years, WATKINS served the community in which she grew up and in which she still resides.

25. During Plaintiffs' career, she taught CIT (de-escalation) skills to numerous officers, SWAT teams, supervisors, and civilians.

26. Plaintiff has responded to numerous mental health crisis calls and was able to deploy her training in Crisis Intervention to deescalate many crisis situations to a calm to get the individuals mental health care.

27. In March of 2017, Plaintiff was granted lateral transfer by former Commander Daniel Godsel and Defendant Antoinette URSITTI to become a CIT (Crisis Intervention Team/De-escalation) Instructor in CPD's Education and Training Academy.

28. Plaintiff came highly recommended to the CIT Unit, by her previous supervisor reference letter, Sgt. Timothy Moriarty in the 22nd District who also became her supervisor in the CIT unit.

29. The Crisis Intervention Team (CIT) unit and being assigned to the Training Academy is considered a prestigious assignment within the CPD.

30. Plaintiff excelled as a CIT instructor as all her evaluations demonstrates.

31. Plaintiff passionately and thoroughly enjoyed her work as a CIT instructor.

## Defendants Retaliates Against Plaintiff for Breaking the Code of Silence

32. On or around September 6, 2019, Officer Joaquin Rodgers was angry about Plaintiffs' ongoing discrimination lawsuit and that Plaintiff would not do Officer Rodgers' assigned work task of carrying cases of water and snacks into the Chicago Police Training Academy.

33. Officer Joaquin Rodgers became enraged that Plaintiff would not do his assigned work task and verbally assaulted Plaintiff by yelling "I can't believe you are not going to go get the cart while I do the handouts, I see what type of person you are, when a person shows you who they are, you better believe them."

34. Officer Rodgers then proceeded to jump out of his seat and stand near the door and proceeded to continue to yell at Plaintiff, "you are always playing the victim, don't ever talk to me, don't ever say anything to me, don't joke with me, don't text me, don't call me, don't ever say nothing to me, do you understand me."

35. Plaintiff knew that Officer Rodgers was having an emotional mental health crisis and deployed verbal de-escalation skills to calm Officer Rodgers as Plaintiff was fearful for her safety.

36. Officer Rodgers left the office to help his team with his assigned task and returned to the office with the cases of water and refreshments for the CIT upcoming class, with Officer Shanel Cade standing by his side and proceeded to yell again at Plaintiff by stating "Jackie, don't ever say nothing to me, don't joke with me, don't ever say nothing to me, do you hear me."

37. Officer Susan Cho was in the office and witnessed Officer Rodgers verbally assault Plaintiff. After all staff left the Office, Officer Cho stated to Plaintiff "something is wrong with him, he acts like the teen in our advanced youth CIT training video, you handled that situation well." "Why he did not ask me to go help his team members, I was not doing nothing."

38. Plaintiff reported Officer Rodgers verbal assault to Defendant Ursitti with the goal of only conflict resolution, but Ursitti did nothing.

39. Defendant Ursitti never addressed the issue of Officer Joaquin Rodgers verbally assaulting Plaintiff that developed into extreme harassment, mobbing, and bullying.

40. Plaintiff addressed Officer Rodgers retaliation and harassment in the CIT all staff meeting with the goal of conflict resolution among staff and supervisors, but again no conflict resolution was deployed.

41. After Plaintiff explained to staff and her supervisors what occurred between Officer Rodgers and why Plaintiff no longer speak to Officer Rodgers, as Rodgers demanded that Plaintiff never speak to him again.

42. Immediately after Plaintiff stated what occurred between Rodgers and herself, Rodgers yelled out that Plaintiff was lying on him and that he "cannot believe that Jackie is trying to make me look bad in front of my supervisors and trying to say that I created a hostile work environment."

43. Officer Rodgers continued yelling with a false narrative to paint himself the Victim and Plaintiff the Bully/Offender by stating that Plaintiff yelled at him and demanded that he do his assigned task.

44. Plaintiff responded to Officer Rodgers false narrative by immediately standing and stating, "he is lying."

45. Plaintiff stated Officer Susan Cho witnessed everything and staff and supervisors looked for Officer Cho to state what happened, and Officer Cho yelled out "they are going back and forth, and I don't care about nothing but my furlough."

46. Sgt. Timothy Moriarty knew Officer Rodgers was lying and stated to officer Joaquin Rodgers, "Joaquin that is your perception, Jackie is just Jackie."

47. Defendant Ursitti stated to Plaintiff in the meeting, "it seems that you, Jackie has closure." Plaintiff stated yes that she does indeed have closure due to exposing Rodgers's behavior during the meeting.

48. Defendant Ursitti then stated, "well Joaquin, Jackie has closure what do you want to do."

49. Officer Rodgers yelled out "I want to write To-From reports."

50. Plaintiff then explained there is no need to write paper and that she can work with Officer Rodgers and that she has closure.

51. Two days later after all CIT staff meeting, on or about October 16, 2019, Defendant Commander Ursitti called Plaintiff and ordered Plaintiff into the sergeants' office with Sgt. Monica Reyes and Sgt. Timothy Moriarty present.

52. After Commander Ursitti demanded a To-From statement, Plaintiff called her FOP Union and spoke to former FOP Vice President Patrick Murray who also violated Plaintiff's contractual agreement as Vice President Murray stated to Plaintiff, "write what your supervisor told you to write."

53. Defendant Ursitti ordered Plaintiff to write a To-From statement and ordered Plaintiff to write in her statement "I addressed issues, I love my job, and want to stay in the CIT Unit."

54. Commander Ursitti refused to address the issue, appeased, and allowed Officer Rodgers to construct a false two-page narrative to discredit Plaintiff's character and work ethic.

55. Plaintiff asked her Supervisors and Defendant Ursitti, Sgt. Monica Reyes, and Sgt. Timothy Moriarty to please don't make her write a To-From statement as Plaintiff had closure because Plaintiff did not want to pad her BIA file with more paperwork.

56.     Sgt. Monica Reyes then gaslighted Plaintiff by stating that a To-From statement is required because Plaintiff was "hostile potentially violent."

57.     Defendant Ursitti appeased Officer Rodgers' demand for To-From statements to change the narrative to paint himself the victim and Plaintiff the offender/bully.

58.     Defendant Ursitti abused her power and violated Plaintiff contractual rights and retaliated by stating to Plaintiff "you are writing the To-From statement because you may sue two (2) years later."

59.     Plaintiff asked Defendant Ursitti if she can please see Officer Rodgers statement, but Ursitti refused to allow Plaintiff to view Officer Rodgers' To-From statement.

60.     Plaintiff felt she was a recipient of bullying, harassment, coverup, retaliation, and filed a CR (Complaint Register), #2019-0005248 at COPA (Civilian Office of Police Accountability), against Defendant Antoinette Ursitti, Sgt. Monica Reyes, and Officer Joaquin Rodgers, on or about December 26, 2019.

61.     CR #2019-0005248, was transferred from COPA to Bureau of Internal Affairs (BIA), under former Deputy Director of BIA, Tina Skahill administration.

62.     Plaintiff emailed BIA Deputy Director Tina Skahill requesting for a fair, thorough, and expeditious investigation unlike the CR handled under her administration which is the catalyst of Plaintiff then ongoing discrimination lawsuit, but a fair investigation did not happen again.

63.     Defendants never addressed the retaliation and harassment against Plaintiff and rewarded Officer Rodgers for his harassment and retaliation against plaintiff by constantly checking on his wellbeing but ignoring Plaintiff's wellbeing which grew into extreme harassment and hostile working environment.

64.     Plaintiff received findings of CR #2019-0005248, on or about November 6, 2020, which revealed a botched investigation and coverup closing the CR out as "Not Sustained."

65.     Plaintiff discovered that BIA Sgt. Larry Thomas never opened a CR# against Commander Antoinette Ursitti and Sgt. Monica Reyes, which is clearly requested and articulated during Plaintiff BIA investigation hearing that was audio recorded under CR#2019-0005248 & CR#2020-0005000.

66.     Plaintiff discovered here again that BIA similar to her then ongoing CR addressed within her then ongoing discrimination lawsuit; violated Plaintiff's due process, contractual and civil rights by refusing to open Plaintiff's CR against her supervisors, Commander Ursitti, and Sgt. Monica Reyes.

67.     Plaintiff discovered here again that BIA similar to her then ongoing CR addressed within her then ongoing discrimination lawsuit; violated Plaintiff's contractual and civil rights by refusing to investigate Plaintiff's CR # 2020-0005000, in a timely manner, as the CR is still pending and open.

68.     Plaintiff discovered that BIA continues to hide and coverup misconduct of officers and retaliate against Officers that report wrongdoing by constantly juggling BIA staff working jointly with the FOP union to coverup wrongdoing of officers and supervisors, as Plaintiff's union and BIA went silent here again.

69.     On about November 6, 2020, upon receiving CR findings, Plaintiff immediately called Chicago Inspector General and filed a complaint requesting CR#2019-0005248, reopened and fully investigated as BIA failed to open Plaintiff CR against her supervisors and Defendants Ursitti and Sgt. Monica Reyes.

70.     On or about November 6, 2020, the City of Chicago Inspector General opened CR# 2020-0005000 to reopen CR#2019-0005248.

71.     Plaintiff received FOIA, BIA CR#2019-0005248, written statements of her Co-workers (Officer Joaquin Rodgers, Officer Susan Cho, Officer Mia Outten, Officer Marie Crump, Officer Cornelius Davis, Officer Shanel Cade, Officer JoAnne Cardinale, Officer Nicole Hoffman, and John Tolley).

72.     Plaintiff reported inconsistencies, botched investigation, defamation, and coverup during her Inspector General CR#2020-0005000 investigative interview taken on or about December 8, 2020, with BIA investigative Sgt. Mark Lamberg.

73.     Plaintiff reported to BIA investigative Sgt. Mark Lamberg additional complaints under audio recorded CR#2020-000500, that Defendants coerced Officer JoAnne Cardinale and Officer Nicole Hoffman to pretext their written statements thereby defaming Plaintiff reputation by writing that Plaintiff was "hostile and potentially violent, and clenched her fist and was hitting her fist in her open hand."

74. Officer JoAnne Cardinale and Officer Nicole Hoffman false written statement of painting Plaintiff "hostile potentially violent" caused Officer Joaquin Rodgers to falsely appear to be the victim and Plaintiff the bully and problem officer.

75. Officer Susan Cho, Officer Mia Outten, and Officer Marie Crump written statements recorded under CR# 2019-0005248, provide facts and evidence that Officer JoAnne Cardinale and Officer Nicole Hoffman written statements are false.

76. Officer Cardinale and Officer Hoffman false statement caused Plaintiff to be a recipient of additional harassment based on sex and race stereotyping of the stereotypical, "angry black woman."

77. BIA investigative Sgt. Mark Lamberg informed Plaintiff that she must address her issues of having CR#2019-0005248 reopened by constructing an email to then Chief of Internal Affairs Karen Konow, which is proven under audio recorded investigative BIA interview under CR #2020-0005000.

78. Plaintiff emailed BIA Deputy Director Tina Skahill and BIA Chief Karen Konow as instructed by BIA investigator Mark Lamberg but neither Skahill nor Konow responded to Plaintiff's emails.

79. BIA Deputy Director Tina Skahill and then BIA Chief Karen Konow not responding to Plaintiffs' emails of complaints of harassment and retaliation further provide evidence as Defendants retaliation; as Skahill and Konow were BIA administrators that signed their names to legal documents involving Plaintiff's then ongoing discrimination lawsuit, thereby providing evidence they were fully aware of participating in coverup and retaliation against Plaintiff.

80. The fact that BIA CR #2020-0005000, is still open provides evidence and fact of still ongoing harassment, retaliation, violation of contractual rights, breach of contract, and coverup as it is revealed by Defendants Ursitti, Officer Rodgers, and Sgt. Monica Reyes audio recorded BIA statements under CR #2019-0005248.

81. Witness statements by Officer Mia Outten, Officer Susan Cho, and Officer Marie Crump recorded under CR #2019-0005248, provide evidence and fact of the harassment, retaliation, and coverup that Plaintiff endured.

82.     Plaintiff emailed former BIA Deputy Director Tina Skahill to view her BIA personnel file stored within BIA, but former BIA Chief Tina Skahill never enforced BIA staff to honor Plaintiff contractual rights as BIA staff (Sgt. Serrano Salvador) constantly emailed Plaintiff that "BIA do not allow Officers to sit and view their individual files."

83.     Defendant, BIA Deputy Director Tina Skahill never required that BIA staff under her command honor Plaintiff's request to view her file and request for a fair and thorough CR investigation but received a promotion to Executive Director of Constitutional Policing and Reform, thereby proving participating in botched investigation and coverup.

84.     Defendant, BIA Chief, Yolanda TALLEY subjected Plaintiff to retaliation on or about May 3, 2023, closed Plaintiff's complaint without compliance to the City of Chicago Inspector General concerning the Bureau of Internal Affairs violating policy and procedure by not allowing Plaintiff to view her file under CR #2023-0001240.

85.     On or about July 22, 2023, Defendant, BIA Chief, Yolanda Talley failed to timely close and investigate Plaintiff's complaint CR#2020-0005000, in that Plaintiff was falsely labeled as "hostile and potentially violent." The failure of BIA to investigate and close the CR is in violation of the Chicago Police Department policy and procedures and breach of contract.

86.     The adverse action by BIA Chief Yolanda Talley followed Plaintiff's involvement in a protected activity within such a period of time as to raise inference of retaliatory motivation.

87.     On or about April 18, 2023, Defendant BIA Sergeant Keisha Frierson falsely told Plaintiff that BIA do not have individual files on officers and do not allow Officers to sit and view their files.

88.     On or about July 16, 2023, Defendant BIA Sergeant Keisha Frierson included Plaintiff on an email that was only privy to Officers and Supervisors assigned to the Bureau of Internal Affairs. Plaintiff felt intimidated and took the email as a threat because it included all rank and file assigned to BIA and there is no explanation for why Plaintiff's name would be included as assigned BIA staff. This email included BIA Chief Yolanda Talley name.

89. On or about April 17, 2024, and April 23, 2024, Defendant Bureau of Internal Affairs (BIA) staff certified mailed Plaintiff two letters to contact BIA Sgt. Keisha Frierson concerning CR #2024-003452, that caused Plaintiff to feel harassed, intimidated, and took the letters as a continuing threat.

90. The adverse action by BIA Sgt. Keisha Frierson followed Plaintiff's involvement in a protected activity within such a period of time as to raise an inference of retaliatory motivation.

91. On or about February 13, 2023, Defendant BIA Sergeant Christine Otruba, sent Plaintiff a condescending email undermining Plaintiff's intelligence by stating "as explained to you, at length, I am confirming that BIA does NOT have individual files for each officer." Sgt. Otruba kept sending Plaintiff emails undermining her intelligence and blocking Plaintiff from viewing her BIA file.

92. On or about June 23, 2023, Defendant BIA Sergeant Christine Otruba wasted Plaintiff's time to come to BIA and attempt to view her file as there were only a few selected files uploaded on the computer.

93. The adverse action by BIA Sgt. Christine Otruba followed Plaintiff's involvement in a protected activity within a such a period of time as to raise an inference of retaliatory motivation.

94. Defendant Ursitti, subjected Plaintiff to continuous demeaning tasks and assignments, in that Ursitti prevented Plaintiff from transferring out the CIT Unit (hostile environment).

95. Defendant Ursitti refused to comply to Plaintiff's clinical therapist letter of request for transfer out the CIT Unit (hostile environment).

96. Defendants' refusal of honoring Plaintiff's clinical therapist request to transfer subjected Plaintiff to work in the Alternate Response Unit (ARS) which was demeaning and frowned upon as it is a unit where Officers are sent to for punishment.

97. On January 9, 2023, Defendants blocked Plaintiff from obtaining copies of the audio recordings of CR# 2019-0005248.

98. On August 15, 2023, Defendant Ursitti ordered Human Resources staff to not issue Plaintiff a retirement package award that is given to all retirees in good standing, which includes, retirement star, baton, recruit photo, and retirement letter signed by the Mayor and Superintendent of Police.

99. The adverse action by Defendant Antoinette URSITTI, followed Plaintiff's involvement in a protected activity within such a period of time as to raise an interference of retaliatory motivation.

100. On March 1, 2021, Defendant Antoinette URSITTI was promoted from Commander of the CIT Unit to Deputy Chief of the CPD's Training Academy, including the CIT Unit.

101. Upon Antoinette URSITTI promotion to Deputy Chief of the Training Academy, former Mayor Lori Lightfoot triple demoted Deputy Chief of CPD's Training Academy Daniel Godsel to a field patrol Lieutenant and immediately gave Defendant URSITTI, Deputy Chief Godsel's position.

102. Defendant URSITTI promotion to Deputy Chief of the Training Academy was in violation of Plaintiff contractual rights and due process in that Plaintiff had an open complaint against Ursitti which placed Ursitti within the Command Channel Review over her CR lodged against her by Plaintiff.

103. The demotion of Academy Deputy Chief Daniel Godsel caused Plaintiff CR against Defendants to be biased as former Deputy Chief Godsel was always fair and held the highest level of integrity and never participated in the "blue code of silence."

104. The demotion of Deputy Chief Daniel Godsel to patrol lieutenant caused Plaintiff to endure unjust investigation, verbal and written harassment, intimidation, and retaliation.

105. Plaintiff has two master's degrees and sent her resume to several units in quest for lateral promotion out patrol, in on about March 2017, Commander Godsel immediately responded to Plaintiff email and granted Plaintiff an interview.

106. Former Training Academy Commander Daniel Godsel granted Plaintiff the CIT position with high regard, despite knowing about Plaintiff then ongoing discrimination lawsuit, which clearly displays his integrity and fairness.

107. The former Academy Deputy Chief Daniel Godsel was the only supervisor that granted Plaintiff and interview as all other supervisors never granted Plaintiff an interview, response email, or call back.

108. Defendant Ursitti retaliated against Plaintiff by painting a false narrative to Plaintiff's supervisors (Deputy Chief Daniel Godsel, Lt. Edward Panosh, Sgt. Timothy Moriarty, Sgt. Ronald Gaines Jr., Sgt. Andres Zayas, Sgt. Joseph Shevlin, Sgt. Joseph Vanourek, Sgt. Aaron Chatman, Sgt. Maximilia Uribe,

Sgt. Jose Estrada, Sgt. Matthew Hilliard, Sgt. Christopher Pillow, and Sgt. Miguel Gonzalez that Plaintiff is a problem officer and officer Joaquin Rodgers is the ideal officer and special privileges.

109. Defendant Ursitti attempted via Plaintiff's direct supervisor Sgt. Andres Zayas to trick Plaintiff back to patrol by having Sgt. Zayas to ask Plaintiff to leave the CIT Unit and help Sgt. Zayas to develop the awards section under the former Training Academy Deputy Chief Daniel Godsel leadership, knowing her friend former Mayor Lori Lightfoot was going to dump Godsel and give his position to Ursitti.

110. Shortly after Sgt. Andres Zayas ask Plaintiff to transfer to the Awards section under Sgt. Zayas direct supervision, Ursitti dumped Sgt. Zayas to patrol in the 18th District.

111. Instead of protecting and shielding whistleblowers from retaliation, the Defendant CITY allows its police department to formally retaliate against whistleblowers by "dumping" them to unfavorable assignments.

112. The only reason Plaintiff did not leave the CIT Unit as requested by Sgt. Zayas is because Plaintiff intuition/discernment sensed a scheme to dump Plaintiff back to patrol.

113. Chief Ursitti response of Plaintiff reporting Rodgers' harassment and retaliation forced Plaintiff into the position of being a whistleblower about illegal misconduct. Being a police whistleblower causes extreme stress for the whistleblower. Police whistleblowers are often treated by other officers with disdain and mistrust.

114. Plaintiff's Clinical Therapist advised Plaintiff to quit her job with CPD because her therapist was afraid that the stress, retaliation, isolation, defamation, and harassment was going to kill Plaintiff.

## CPD's Code of Silence

115. The Chicago Police Department has a long history of engaging in a Code of Silence with respect to officer misconduct.

116. This "Code or Silence" and/or "Blue Shield," wherein officers and supervisors cover up and condone the misconduct and even unlawful conduct of other officers, such as occurred in this case.

117. The DOJ concluded that a Code of Silence exists within the Chicago Police Department causing officers cover up the misconduct of other officers.

118. The DOJ report quotes a sergeant on the CPD as saying "if someone comes forward as a whistleblower in the Department, they are dead on the street."

119. As a direct and proximate result of Defendants' misconduct, Plaintiff suffered damages, including financial, loss of medical benefits, deteriorated physical health, extensive hair loss, deteriorated health, damages to her reputation, and ongoing stress and anxiety for her safety which will be proven at trial.

120. Due to Defendants ignoring Plaintiff's complaint of exercising her protected rights and Ursitti's authority and power over the Plaintiff, Plaintiff was left with no choice but to be constructively discharged on August 15, 2023.

121. Defendant failed to conduct a prompt, thorough, and objective investigation of Plaintiff's complaint of harassment and retaliation, as CR# 2020-0005000 is still open and under investigation.

122. Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

123. The adverse action by Defendants followed Plaintiff's involvement in a protected activity within such a period of time as to raise an inference of retaliatory motivation.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff, WATKINS, respectfully requests that this Court enter judgment in her favor and against Defendants and the CITY of Chicago, and granting as follows: back pay and benefits, interest on back pay and benefits, front pay and benefits, compensatory damages for emotional pain and suffering, punitive damages, reasonable fees and cost, and all other forms of relief available in law and equity. Plaintiff also request the Chicago Police Department and all other City Agencies to support, endorse, and pass the *Workplace Psychological Safety Act;* and post signs throughout all City facilities notifying all workers of their rights and prevention of psychological abuse and restructure BIA.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby requests that all issues be submitted to and determined by a jury.

Dated this 30th day of May 2024.
Respectfully submitted,
JACCQUELINE A. WATKINS, Plaintiff, *Pro Se*
Jacquelinegl@comcast.net
(773) 562-0167

Plaintiff, *Pro Se*
Jacqueline A. Watkins
/s/ Jacqueline A. Watkins
1727 W. 107th Street
Chicago, IL 60643

# EXHIBITS

21 OCT 2019

TO:              CIT Coordinator
                 Lt. Antoinette Ursitti
                 Crisis Intervention Unit

FROM:            Watkins, Jacqueline #16919

SUBJECT:         Staff meeting status conducted 16 OCT 2019

R/O was instructed by Lt. Antoinette Ursitti, Sgt. Timothy Moriarty and Sgt. Monica Reyes to generate this To -From report regarding a staff meeting conducted Wednesday, October 16, 2019. Present at the staff meeting were Lt. Antoinette Ursitti, Sgt. Timothy Moriarty, Sgt. Monica Reyes, P/O Shanel Cade, P/O Joanne Cardinale, P/O Susan Cho, P/O Marie Crump, P/O Cornelius Davis, P/O Nicole Hoffman, P/O Mia Otten, Joaquin Rodgers and P/O John Tolley.

During the staff meeting R/O vocalized some issues and afterwards R/O felt that her issues were well received and resolved. R/O is very appreciative that a meeting was conducted that allowed open dialogue to vocalize any issues or disagreements. R/O love her job, felt great after the meeting and is excited to be within the CIT Unit and will continue to work united, humbly and respectfully as a TEAM with everyone within and outside the CIT Unit.

Sincerely & Respectfully,

Watkins, Jacqueline #16919

Approved:

_____

_____

_____

# RECEIPT OF FORMAL STATEMENT - DEPARTMENT MEMBERS
BUREAU OF INTERNAL AFFAIRS
CHICAGO POLICE DEPARTMENT

| NAME OF DEPARTMENT MEMBER | RANK | STAR NO. | EMPLOYEE NO. | UOA |
|---|---|---|---|---|
| Jacquelin Watkins | P.O. | 16919 | ████ | 143 |

| LOCATION OF STATEMENT | DATE | TIME | LOG NUMBER |
|---|---|---|---|
| 3510 S. Michigan Ave, 5th FL | 15 JAN 20 | 1056 | 2019-0005248 |

I, *Watkins, Jacqueline* , acknowledge that I have been provided a copy of the Formal

NAME OF DEPARTMENT MEMBER

Statement I have made that was Audio Recorded or in Question & Answer format within seventy-two (72)

hours of the time the statement was made in accordance with my respective bargaining unit agreement.

☐ I have reviewed the Question & Answer Formal Statement and have initialed each page and signed the final page as required.

☒ I have been advised that I have up to 72 hours to review the copy of the Audio Recorded Formal Statement provided to me. I have also been advised that if new information and/or clarification of a previously submitted response is necessary, I will contact the Investigator via Department email at larry.thomasjr@chicagopolice.org___ within 72 hours from the time of the statement.

Jacquelin Watkins #16919
PRINT NAME OF DEPARTMENT MEMBER

SIGNATURE OF DEPARTMENT MEMBER

15 JAN 20   1056
DATE/TIME

Sgt. Larry Thomas #1846
PRINT NAME OF INVESTIGATOR

SIGNATURE OF INVESTIGATOR

15 JAN 20 / 1056
DATE/TIME

CPD-44.261(5/17)

| LOG NO. 2019-0005248 |
|---|
| ATTACHMENT NO. |

# CRISIS ESCALATION CYCLE



| SUBJECT | OFFICER | RESPONSE |
|---|---|---|
| **Level 4**: Violence | Anger/Fear | Tactical |
| **Level 3**: Hostility | Fear | Assertive |
| **Level 2**: Anger | Anxiety | Empathy |
| **Level 1**: Anxiety | Empathy | Supportive |
| CALM | SUPPORTIVE | |

# Crisis Escalation Cycle



## Hostility:

- Anger with a focused recipient
- Hostility has detectable behaviors:
  - Irritable
  - Demanding
  - Argumentative
  - Provoking
  - Antagonistic
  - Oppositional
  - Loud
  - Threatening
- Transition to violence can occur rapidly

**BUREAU OF PATROL**
001st District

13 April 2020

TO:      Jacob Alderden #62
              Commander
              001st District

FROM:   Nicole Hoffman # 11517
              Police Officer
              001st District

SUBJECT:   Witness Report

My duty status on 06 Sep 19 was full duty assigned that day to Lemart training at the O'Hare location. On 16 Oct 19 R/O was present for the team meeting when PO Jacquelin Watkins addressed and issue she had with PO Joaquin Rodgers. R/O recalls PO Jacquelin Watkins stating that she had a problem with PO Joaquin Rodgers and wanted to discuss the issue. R/O does not recall word for word what was said in regards to the incident that had occurred on 06 Sep 19 when R/O was not present, R/O does recall, that PO Joaquin Rodgers related, again not verbatim, that what PO Jacquelin Watkins stated was not the whole story of what had taken place. PO Jacquelin Watkins became very upset and jumped up out of her chair that she was sitting in and clenched her one fist and hit it to her other open hand in an aggressive manner and stated, "that is not true. " PO Joaquin Rodgers was calm during the meeting and did not act aggressively at no point

P.O. Nicole Hoffman #11517
001st District

Approved:

_____

_____

_____

**Office of Operations**                                              **15 April 2020**
**Crisis Intervention Unit**

**To:**          Larry E. Thomas Jr.
                 Investigator
                 Bureau of Internal Affairs

**From:**        Joanne M. Cardinale
                 Police Officer
                 Crisis Intervention Unit

**Subject:**     Witness Report-CR# 2019-0005248


       This statement is not being given voluntarily, but under duress. R/O is only giving this statement at this time because R/O knows that R/O could lose her job if she refuses the direct order being given to her. This "TO/FROM" report should not be considered a verbatim statement but only a summary of requested information.

       R/O was directed by above investigator to submit a required witness statement related to the above Complaint Register. R/O is required to answer the following five questions which she will do so in the following report.

       Question #1: What was your duty status on 06 Sep 19?


       Answer: R/O was on duty from 0700 to 1530 hours on 06 Sep 19.



       Question #2: Were you present at a team meeting 16 Oct 19 when PO Watkins explained to the team the issues between her and PO Rodgers? If yes, please describe what was said in the meeting.

       Answer: On 16 Oct 19, R/O was present at a team meeting. Shortly after the meeting began, PO Watkins expressed that she wanted to discuss an issue she had with PO Rodgers. She stated, not verbatim, that she had a verbal altercation with PO Rodgers that occurred more than a month previously. She stated that when requested by other team members via text to help bring supplies into the building, she was at her desk at the time while PO Rodgers was on the floor gathering and organizing materials for his upcoming CIT Training class. PO Watkins stated that she asked PO Rodgers if he was going to go help the other members, to which he replied that he was busy working at the time. PO Watkins stated that what she was doing was important as well, however, she didn't say what she was doing at the time. R/O does not recall what PO Watkins stated happened after that, however, she stated that PO Rodgers eventually left the room and went to help the other team members. PO Watkins further stated that upon PO Rodgers's return to the room, he told PO Watkins that moving forward he requests that she only speak to him if it is business related.

**Office of Operations**                                    **15 April 2020**
**Crisis Intervention Unit**

PO Watkins further explained that she was very upset by PO Rodgers's statement and it made her feel uncomfortable around him. She stated that she could keep things at a business level but didn't want to be in the same room as him, as it made her uncomfortable.

PO Rodgers then asked if he could speak. PO Rodgers then began to explain what happened during this altercation. PO Rodgers stated that he was in the room gathering his materials for his upcoming class. He stated that he had papers all over the floor as he was attempting to organize them. PO Rodgers stated that both he and PO Watkins received a text from other team members requesting help with supplies. PO Watkins asked PO Rodgers if he was going to go and help them. PO Rodgers then informed PO Watkins that he was busy and would she mind going to help them. At this time, PO Watkins said something to the effect that he has less seniority or he is the man and that he should go. PO Rodgers asked PO Watkins if she was serious and she said yes. PO Rodgers then left the room to go help the other team members. PO Rodgers stated that when he returned to the room, he told PO Watkins that he will only speak to her if it is business related moving forward.

At this time, PO Watkins stood up from the desk she was sitting in, clearly agitated, raising her voice and with a clenched fist punching her open hand, began saying that PO Rodgers was lying. Her behavior at this time alerted the room, including R/O, as to the uncertainty of what would happen next. PO Watkins went on to say that this was a toxic environment.

PO Rodgers, remaining calm throughout the entire meeting, stated that he was being portrayed as an individual that people should be afraid of and that is an attack on his character and he had a right to defend himself against false accusations.

Eventually the meeting moved on to other business and was adjourned.

Question #3: At any time during the team meeting did PO Rodgers state that PO Watkins had lied about him? If so, please explain what was said.

Answer: Yes. PO Rodgers stated that PO Watkin's account of what had occurred in the initial verbal altercation did not happen the way PO Watkins was reporting. He further stated that PO Watkins was attempting to paint a picture to the other team members that they should be fearful of PO Rodgers.

**Office of Operations**                                          **15 April 2020**
**Crisis Intervention Unit**

Question #4: Do you have any information regarding statements made by either officer during the meeting that were not true?

Answer: R/O cannot speak to the actual event that occurred when the initial verbal altercation took place as R/O was not present. R/O can only comment on what PO Watkins and PO Rodgers stated in the meeting regarding that event.

Question #5: Is there any additional information you can add regarding this incident?

Answer: It is R/Os belief that this matter between PO Watkins and PO Rodgers should have been addressed at the time of the incident and dealt with as an issue between the two officers and/or their supervisors. R/O does not believe that this was an issue for the team to be brought out in a public forum. If PO Watkins felt uncomfortable around PO Rodgers or otherwise felt that this was a toxic environment, R/O does not understand why it took over a month for PO Watkins to say anything about the incident. R/O also does not understand why PO Watkins voluntarily moved from her work space (N/W corner of the building-2nd floor-room 207) that she was working in for over a year to a desk that is located next to PO Rodgers (south side of the building-1st floor). This move occurred after the 16 Oct 19 meeting. R/O has no other information to add at this time.

P.O. Joanne Cardinale #4737
Crisis Intervention Unit

**OFFICE OF OPERATIONS**                                   16 APR 2020
Crisis Intervention Unit


**TO:**        Larry E. Thomas Jr.
              Investigator
              Bureau of Internal Affairs

**FROM:**      Susan Cho #7246
              Police Officer
              Unit 143 - Crisis Intervention Unit

**SUBJECT:**   2019-0005248 – Witness Acknowledgement


This statement is not being given voluntarily, but under duress. I am only giving this statement at this time because I know that I could lose my job if I refuse the direct order being given to me. This "TO/FROM" report should not be considered a verbatim statement but only a summary of requested information.

On 06 Sep 19, R/O was on-duty and present in Room 207 at the Education and Training Division academy when an argument took place between PO Joaquin Rodgers and PO Jacqueline Watkins. The argument started after both officers received a text message from another team member, requesting that a cart be taken down to the officers who had picked up supplies. Upon receiving the text, PO Watkins asked PO Rodgers if he was going to take a cart down to the other team members. However, PO Rodgers did not respond and continued organizing handout materials for an upcoming CIT class. A few minutes later, PO Watkins again asked PO Rodgers if he was going to take a cart to the officers. PO Rodgers related that he was doing something and asked her to do it. PO Watkins responded by saying that what she was doing was important too and that he should take the cart down. At that point, the argument quickly escalated; PO Rodgers began raising his voice and telling PO Watkins that she was constantly playing the victim. He went on to say that going forward, she should refrain from communicating with him outside of a professional capacity. PO Rodgers then left the room and returned several minutes later with a cart filled with supplies. As PO Rodgers was unloading the supplies, he told PO Watkins that he meant what he said about keeping all of their communication strictly business-related. PO Watkins concurred and PO Rodgers proceeded to leave the room. With respect to additional witnesses, PO Shanel Cade and PO John Tolley both entered Room 207 at some point during the argument. However, R/O does not recall exactly when this occurred.

R/O was also present at a team meeting on 16 Oct 19, when PO Watkins brought up the argument that occurred between her and PO Rodgers on 06 Sep 19. PO Watkins related that the incident was still bothering her and that she wanted the team to be aware of what had transpired between them. In PO Watkins' account of the incident, she expressed feeling verbally attacked by PO Rodgers and believed that his behavior towards her was unwarranted. While R/O does not recall if PO Rodgers stated that PO Watkins had lied about him, they appeared to recall the incident differently. PO Rodgers described feeling disrespected, stating that PO Watkins had referred to herself as a more senior or seasoned officer when she told him to take a cart to the other team members. He went on to say that he did not appreciate PO Watkins bringing up the incident in front of his supervisors and

making it seem like he was creating a hostile work environment. During the meeting, PO Watkins appeared to become angry and, at one point, stood up abruptly and began raising her voice as she attempted to refute something that PO Rodgers had said. In the end, PO Rodgers and PO Watkins were both ordered to submit To-From reports regarding the original incident. R/O has no additional information to add at this time.

P.O. Susan Cho #7246
Crisis Intervention Unit

**OFFICE OF OPERATIONS**                                                    16 Apr 2020

**TO:**        Larry E. Thomas, Jr.
               Investigation Sergeant
               Bureau of Internal Affairs

**FROM:**      Mia G. Outten, Star #12591

**SUBJECT: Log No. 2019-0005248 Type: Complaint Register**

This To/From Witness Report answers "Specific Questions" regarding the above Log No. 2019-0005248 Type: Complaint Register.

On Friday, 06 Sep 19, I arrived at work present for duty.

I attended a scheduled CIT Team Meeting on Wednesday, 16 Oct 19. Prior to its closing, Commander Antionette Ursitti asked, "for additional comments and/or concerns", if any. Officer Jacquelin Watkins was acknowledged. Officer Jacquelin Watkins indicated an altercation had occurred between Officer Joaquin Rodgers and her regarding a team work assignment; and, in their disagreements, AN ARGUMENT ENSUED BY WAY OF "A HEATED, OPEN DISPUTE!"

Officer Joaquin Rodgers and I were seated side by side, at the 16 Oct 19 meeting. My efforts to quiet him were ignored! Officer Joaquin Rodgers yelled, "He was not going to allow Officer Jacquelin Watkins to lie or discredit him regarding the alleged accusation!" Officer Jacquelin Watkins stated, "I'm not lying nor trying to discredit him... just speaking the facts; and, that she could still work with him!"

Officer Jacquelin Watkins' emotional state during the verbal altercation was questioned; i.e., "as being HOSTILE to a degree that would manifest VIOLENCE AND/OR BODILY HARM ...UNTRUE!

Commander Antionette Ursitti asked Officer Joaquin Rodgers, "What would be his solution to this matter?" Officer Joaquin Rodgers responded, "Paper, a TO/FROM or something."

This concludes the TO/FROM Witness Report.

*[signature]*

Officer Mia G. Outten, Star #12591

**Office of Operations**
**Crisis Intervention Unit**

16 Apr 2020

TO:       Larry E. Thomas Jr.
            Investigator
            Bureau of Internal Affairs

FROM:   Shanel Cade
            Police Officer
            Crisis Intervention Unit

SUBJECT:   2019-0005248 – Witness Acknowledgement

This statement is not given voluntarily, but under duress. I am only giving this statement at this time because I know that I could lose my job if I refuse the direct order given me. This "To/FROM" report should not be considered a verbatim statement but only a summary of requested information.

On 6 Sep 19, I was working in full duty status as a Chicago Police Officer assigned to unit 143 at the Chicago Police Academy located at 1300 W. Jackson Blvd.

I was present at the team meeting on 16 Oct 19 when PO Watkins discussed with the team the issues between herself and PO Rodgers. I do not recall what was said but both officers seem to have a difference in opinion about what was said during a dispute between the two of them on an earlier date.

I do not recall if PO Rodgers stated that PO Watkins had lied about him. I do not have any information regarding the statements made by either officer during the meeting that were not true and I do not have any additional information regarding this incident.

Shanel Cade #18845
Police Officer
Crisis Intervention Unit

TO:        BIA Sgt. Larry Thomas

FROM:     P.O. Marie Crump #4061

DATE:     23 April 2020

RE:        Log Number NO. 2019-0005248

---

**I would like to preface this statement by stating that I am not giving this statement voluntarily, but under duress. I am only giving this statement at this time because I have been advised by the Chicago Police Department that if I do not give a statement I could face disciplinary proceedings that could lead to termination of my employment.**

**1. What was your duty status on 06 Sep 19?**

My duty status on 06 September 2019 was full duty, working at the Police Academy 1300 W. Jackson Blvd.

**2. Were you present at a team meeting 16 Oct 19 when PO Watkins explained to the team the issues between her and PO Rodgers? If yes, please describe what was said in the meeting.**

I was present at a team meeting on 16 October 2019 when PO Watkins expressed her feelings about an incident that had taken place on 06 September 2019 between her and PO Rogers. During the meetings and past meetings the Command staff had encouraged all of the team members to speak out if there were any issues that they wanted to discuss. To the best of recollection, PO Watkins recounted an incident that occurred between her and PO Rodgers on 06 September 2019. PO Watkins related to the team that she was sitting at her desk working on her assigned tasks for the day and PO Rogers was sitting on the floor putting together handouts to be issued for his class that he was a team lead for, which was scheduled for that following week. PO Watkins related to me that PO Cade group texted her and PO Rodgers asking if one of them could get the cart because PO Cade and PO Outten were returning back to the training academy from the store with groceries (snacks, water, pop, coffee, creamers, etc) for their (PO Rodgers, PO Cade, PO Outten) class. PO Watkins related that she asked PO Rodgers if he was going to get the cart. PO Watkins related that PO Rodgers became irate and stated words to the effect of "For real...... you are not going to get the cart while I do these handouts " PO Watkins then stated to PO Rodgers stated that what she was working on was important also. PO Watkins related to the best of my recollection that PO Rodgers stated to her, "I see what type of person you are, when a person shows you who you are you better believe them.

You are always playing the victim." PO Watkins stated that PO Rodgers then left out of the office to get the cart. PO Watkins then stated that PO Rodgers returned and said something to effect "Don't you ever say nothing to me. Don't text me, don't call me, don't joke with me. Don't ever say nothing to me."

I recall PO Watkins stating that ever since the incident that occurred on 06 September 2019, she felt like PO Rogers was wrong in how he addressed PO Watkins and she felt like PO Rodgers owed her an apology because he was wrong. PO Rodgers told PO Watkins that she was lying about what happened and was trying to make him look bad in front of his supervisors and make him (PO Rodgers) appear as though he is creating a hostile work environment. PO Watkins and PO Rodgers went back and forth. Both PO Rodgers and PO Watkins identified PO Cho as being present during the altercation on 06 September 2019. Sgt. Moriarty, intervened to try and calm the parties down. Commander Ursitti, told PO Watkins that it seems as though PO Watkins got closure on the altercation. In my opinion, it did appear as though PO Watkins got closure made peace with PO Rodgers wanted to resume a working relationship with PO Rodgers. PO Rodgers kept going on about how PO Watkins made him look bad. Commander Ursitti asked PO Rodgers how we could resolve this because it appears as though PO Watkins made peace with the situation. PO Rodgers said that he wanted to do a TO-FROM, Commander Ursitti said okay.

3. **At any time during the team meeting did PO Rodgers state that PO Watkins had lied about him? If so, please explain what was said.**

As explained above and from what I recall, PO Rodgers claimed that PO Watkins was not being truthful about what had occurred.

4. **Do you have any information regarding statements made by either officer during the meeting that were not true?**

I was not present during the alleged incident and thus cannot give an opinion as to what happened or as to who was truthful or not truthful.

5. **Is there any additional information you can add regarding this incident?**

Not at this time.

PO Marie Crump #4061
Witness

Office of Operations                                          08 May 2020
Crisis Intervention Unit

**TO:**                  Sgt. Larry Thomas, Jr.
                        Bureau of Internal Affairs
                        Unit 121

**FROM:**            P.O. John F. Tolley, Jr.
                        Crisis Intervention Unit

**SUBJECT:**         Witness Report

This statement is not being given voluntarily, but under duress. I am only giving this statement at this time because I know that I could lose my job if I refuse the direct order being given to me. This "TO/FROM" report should not be considered a verbatim statement but only a summary of requested information.

On 16 Oct 19 I was working as a police officer in the CIT office, unit 143.

I was present at a team meeting on that date, 16 Oct 19, when PO Watkins explained issues between her and PO Rodgers stemming from an incident that occurred on 06 Sep 19. I do not recall what was said during the meeting. I do recall PO Watkins getting physically upset at one point as she stood up from her seat and raised her voice in a hostile manner and point at PO Rodgers. PO Rodgers remained seated and responded in a calm manner stating something to the effect that PO Watkins was creating a hostile work environment. I considered the discussion to be personal between the two officers and did not pay attention to what was being said as it didn't concern me.

I do not recall PO Rodgers stating PO Watkins lied directly. I believe he may have said he never yelled, or raised his voice.

I believe the statements made by both officers during the meeting were true to their own perception.

On 06 Sep 19 I entered the office and saw PO Watkins and PO Rogers were having a discussion. PO Watkins was at her desk and PO Rodgers was controlling a flatbed dollie loaded with office supplies. At no point did either officer raise their voices in my opinion. The discussion ended with both officers agreeing they would have a strictly business relationship.

*J Tolley 5801*

P.O. John F. Tolley, Jr. #5801
Crisis Intervention Unit

**BUREAU OF OPERATIONS**
Area 4

11 August 2020

TO:        Larry Thomas Jr.
              Investigator
              Bureau of Internal Affairs

FROM:     Cornelius Davis#16503
              Police Officer
              Area 4

SUBJECT:    Log Number #2019-0005248

        This statement is not being given voluntarily, but under duress. I am only giving this statement at this time because I know that I could lose my job if I refuse the direct order being given to me by Investigator Larry Thomas. This "TO/FROM" report should not be considered a verbatim statement but only a summary of requested information.

1. What was your duty status on 16 Oct 19?

   On October 16, 2019, I was working full duty in Uniform.

2. Were you present at a team meeting 16 Oct 19 when PO Watkins explained to the team the issues between her and PO Rodgers that stemmed from an incident that occurred on 06 Sep 19? If yes, please describe what was said in the meeting.

   Yes, I was present at a team meeting on 16 October 2019. I don't recall the specific details of that meeting due to the lapse in time.

3. At any time during the team meeting did PO Rodgers state that PO Watkins had lied about him? If so, please explain what was said.

   I don't recall at this time.

4. Do you have any information regarding statements made by either officer during the meeting that were not true?

   No, I don't recall having any information regarding either officer during the meeting at this time.

5. Is there any additional information you can add regarding this incident?

   No, there is no additional information I can provide regarding this incident at this time.

                                     _P.O. Cornelius Davis #16503_
                                       Area 4

Approved:

_____

**BUREAU OF PATROL**                                                 21 October 2019
Crisis Intervention Unit

TO:         Antionette Ursitti
            Lieutenant
            Crisis Intervention Unit

FROM:       Joaquin Rodgers
            Police Officer
            Crisis Intervention Unit

SUBJECT:    06 SEP 2019 Incident regarding P.O. Watkins and P.O. Rodgers

On Friday, Sept 6, 2019, P.O. Joaquin Rodgers, P.O. Susan Cho, and P.O. Jacqueline Watkins, were present in the CIT office located on the 2nd floor at the time of the initial incident. At 1146hrs, P.O. Shanel Cade sent a group text to P.O. Rodgers and P.O. Watkins, which stated, "can someone bring the cart down we will be there in 15 min". At which time, P.O. Watkins stated, not verbatim "I'm the senior officer, I nominate you or volunteer you (referring to P.O. Rodgers) to go downstairs". P.O. Watkins was referring to retrieving the cart from the firearm's range and assisting P.O. Mia Outten and P.O. Shanel Cade in bringing up various items in preparation for the Basic CIT training class scheduled for 09-13 Sep 2019. P.O. Rodgers assumed P.O. Watkins was joking when she made the aforementioned statement. At 1156hrs P.O Watkins replied to the group text, "Ok". From approximately 0900hrs P.O. Rodgers were preparing the weekly handouts for the upcoming week of training, so at about noon, P.O. Rodgers asked P.O. Watkins, "could you help out Shanel and Mia, I'm trying to finish these handouts". P.O. Watkins stated, "NO". P.O. Rodgers paused for about 1-2 minutes and stated "So you're really not going to go down stairs and help out", P.O. Watkins replied "No, they're your team members". At which, P.O. Rodgers realized the previous comment, stated by P.O. Watkins, regarding being the senior officer wasn't a joke, nor stated with humorous intentions.

P.O. Rodgers walked to the office door, and stated while at the door, "I can't believe you're not going to help, and I guess you were serious in what you said earlier, basically telling me I was going to help them, and you wasn't. I thought you were playing, matter of fact, don't play with me again, don't say nothing to me if its not work related". P.O. Rodgers proceeded downstairs to assist P.O. Cade and P.O. Outten. At which time, P.O. Rodgers related to P.O. Cade and P.O. Outten of the incident. P.O. Rodgers also said, I'll finish my conversation with P.O. Watkins while you guys are there".

After loading up the cart, P.O. Rodgers and P.O. Shanel proceeded upstairs. When returning to the CIT office, P.O. Cho, P.O. Cade, Watkins, P.O. Tolley, John, was present during the conclusion of our conversation. P.O. Rodgers stated, "that was really selfish for you (referring to P.O. Watkins) not to help out," P.O. Watkins stated, "I got my own work/stuff I'm doing, your work isn't more important than mine, you not the only one who has something to do." P.O. Rodgers stated, "that's cool, but I never said my work was, but I was trying to finish these handout for next week, and I thought you were playing

when you made your first comment, I'm a grown ass man, we're all adults here. Don't play with me like that anymore, and like I said earlier, if its not work related don't speak to me." At which time while making these comments after unloading the various items, P.O. Rodgers left the office. P.O. Watkins said, "fine I won't say anything to you". After the incident P.O. Rodgers have not made any gestures to P.O. Watkins since the incident, although on Thrusday, 03 OCT 2019, P.O. Rodgers had to retrieve a copy of role play scenarios from P.O. Watkins. P.O. Rodgers asked P.O. Watkins for copy, in which P.O. Watkins handed him a copy. P.O. Rodgers has not had any other contact or conversation with P.O. Watkins.

Joaquin R. Roddges #7116

# RECEIPT OF FORMAL STATEMENT - DEPARTMENT MEMBERS
BUREAU OF INTERNAL AFFAIRS
CHICAGO POLICE DEPARTMENT

| NAME OF DEPARTMENT MEMBER | RANK | STAR NO. | EMPLOYEE NO. | UOA |
|---|---|---|---|---|
| Monica Reyes | Sergeant | 1788 | ▇ | 143 |

| LOCATION OF STATEMENT | DATE | TIME | LOG NUMBER |
|---|---|---|---|
| 3510 S. Michigan Ave, 5th FL | 01 OCT 20 | 0917 | 2019-0005248 |

I, _Sgt. Reyes, Monica_ , acknowledge that I have been provided a copy of the Formal
NAME OF DEPARTMENT MEMBER

Statement I have made that was Audio Recorded or in Question & Answer format within seventy-two (72)

hours of the time the statement was made in accordance with my respective bargaining unit agreement.

☐ I have reviewed the Question & Answer Formal Statement and have initialed each page and
signed the final page as required.

☒ I have been advised that I have up to 72 hours to review the copy of the Audio Recorded
Formal Statement provided to me. I have also been advised that if new information and/or
clarification of a previously submitted response is necessary, I will contact the Investigator via
Department email at _larry.thomasjr@chicagopolice.org_ within 72 hours from the time of the
statement.

Sgt. Monica Reyes #1788
PRINT NAME OF DEPARTMENT MEMBER

SIGNATURE OF DEPARTMENT MEMBER

01 OCT. 20 / 0917
DATE/TIME

Sgt. Larry Thomas #1846
PRINT NAME OF INVESTIGATOR

SIGNATURE OF INVESTIGATOR

01 OCT 20 / 0917
DATE/TIME

CPD-44.261(5/17)

| LOG NO. 2019-0005248 |
|---|
| ATTACHMENT NO. |

## Employee Alpha / Number / Star Query
Report Date=8/29/2020  Requested By=█████
For CityWide

| TITLE | LAST | FIRST | MI | STAR # | PC # | EMP # | BIRTH DATE | AGE | APPTMT DATE | SEN DATE | YOJ | ASGN | DTL | WATCH | SEX | RACE | HGT | WGT | DIST | STATUS | VAC DATE | VAC DESC | VAC AGE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9171 | MORIARTY | TIMOTHY | M | | ███ | ███ | ██- ██- 1969 | 50 | 04-NOV-1996 | 01-MAY-2014 | 23 | 143 | | ■ | M | WHT | 509 | 187 | | INACTIVE | 5/4/2020 | RESIGN PENSION | 50 |

**THERE ARE 1 RECORD(S) DISPLAYED**
**FOR OFFICIAL USE ONLY - NOT FOR DISSEMINATION**

# RECEIPT OF FORMAL STATEMENT - DEPARTMENT MEMBERS
BUREAU OF INTERNAL AFFAIRS
CHICAGO POLICE DEPARTMENT

| NAME OF DEPARTMENT MEMBER | RANK | STAR NO. | EMPLOYEE NO. | UOA |
|---|---|---|---|---|
| Antoinett Ursitti | Command | 628 | ▮▮▮ | 143 |

| LOCATION OF STATEMENT | DATE | TIME | LOG NUMBER |
|---|---|---|---|
| 3510 S. Michigan Ave, 5th FL | 01 OCT 20 | 1033 | 2019-0005248 |

I, _ANTOINETT URSITTI_ , acknowledge that I have been provided a copy of the Formal
NAME OF DEPARTMENT MEMBER

Statement I have made that was Audio Recorded or in Question & Answer format within seventy-two (72)

hours of the time the statement was made in accordance with my respective bargaining unit agreement.

☐ I have reviewed the Question & Answer Formal Statement and have initialed each page and
signed the final page as required.

☒ I have been advised that I have up to 72 hours to review the copy of the Audio Recorded
Formal Statement provided to me. I have also been advised that if new information and/or
clarification of a previously submitted response is necessary, I will contact the Investigator via
Department email at _larry.thomasjr@chicagopolice.org_ within 72 hours from the time of the
statement.

Commander Antoinett Ursitti #628                    Sgt. Larry Thomas #1846
PRINT NAME OF DEPARTMENT MEMBER                     PRINT NAME OF INVESTIGATOR

_[signature]_                                       _Sgt. T C_
SIGNATURE OF DEPARTMENT MEMBER                      SIGNATURE OF INVESTIGATOR

01 OCT 2020 / 1034                                  01 OCT 20 / 1034
DATE/TIME                                           DATE/TIME

**CPD-44.261(5/17)**

| LOG NO. 2019-0005248 |
|---|
| ATTACHMENT NO. |

# RECEIPT OF FORMAL STATEMENT - DEPARTMENT MEMBERS
BUREAU OF INTERNAL AFFAIRS
CHICAGO POLICE DEPARTMENT

| NAME OF DEPARTMENT MEMBER | RANK | STAR NO. | EMPLOYEE NO. | UOA |
|---|---|---|---|---|
| Joaquin Rodgers | PO | 7116 | ███ | 143 |

| LOCATION OF STATEMENT | DATE | TIME | LOG NUMBER |
|---|---|---|---|
| 3510 S. Michigan Ave, 5th FL | 01 OCT 20 | 1124 | 2019-0005248 |

I, _Joaquin Rodgers_ , acknowledge that I have been provided a copy of the Formal
NAME OF DEPARTMENT MEMBER

Statement I have made that was Audio Recorded or in Question & Answer format within seventy-two (72)

hours of the time the statement was made in accordance with my respective bargaining unit agreement.

☐ I have reviewed the Question & Answer Formal Statement and have initialed each page and signed the final page as required.

☒ I have been advised that I have up to 72 hours to review the copy of the Audio Recorded Formal Statement provided to me. I have also been advised that if new information and/or clarification of a previously submitted response is necessary, I will contact the Investigator via Department email at _larry.thomasjr@chicagopolice.org_ within 72 hours from the time of the statement.

PO Joaquin Rodgers #7116
PRINT NAME OF DEPARTMENT MEMBER

SIGNATURE OF DEPARTMENT MEMBER

01 OCT 20 / 1124
DATE/TIME

Sgt. Larry Thomas #1846
PRINT NAME OF INVESTIGATOR

SIGNATURE OF INVESTIGATOR

01 OCT 20 / 1124
DATE/TIME

CPD-44.261(5/17)

| LOG NO. 2019-0005248 |
|---|
| ATTACHMENT NO. |

BUREAU OF INTERNAL AFFAIRS                          04 October 2020
General Investigations Section                      Log 2019-0005248


TO:        Karen M. Konow
           Chief
           Bureau of Internal Affairs


FROM:      Sgt. Larry Thomas #1846
           Bureau of Internal Affairs
           General Investigations Section


SUBJECT:   Approval of Complaint Log 2019-0005248


           The attached Complaint Log investigation has been completed and is
submitted for your approval.

                                           Sgt. Larry Thomas #1846
                                           Bureau of Internal Affairs
                                           General Investigations Section


Approved:

Jonathan Reckard #348
Lieutenant
Bureau of Internal Affairs



**Lori E. Lightfoot**
Mayor

**Department of Police · City of Chicago**
3510 S. Michigan Avenue · Chicago, Illinois 60653

**David O. Brown**
Superintendent of Police

11/6/2020 12:00:00 AM
Reference: 2019-0005248

JACQUELIN WATKINS
UNIT: 143

JACQUELIN WATKINS:

The Bureau of Internal Affairs has completed a thorough investigation of your allegation of misconduct by a member of the Chicago Police Department. Thank you for making us aware of this matter, for we share your concern about the conduct of our members.

All available evidence was evaluated, and it has been determined that the evidence was not sufficient to either prove or disprove the allegations made. The Complaint Log is therefore classified as Not Sustained. If you have any questions, please contact the Bureau of Internal Affairs at (312) 745-6310.

We appreciate you bringing this matter to our attention and your cooperation with this investigation.

Sincerely,

Advocate Section
Bureau of Internal Affairs

# EXHIBITS

# Mayor sends deputy chief in charge of CPD academy "to the moon" in another dramatic demotion

One of the Chicago Police Department's highest-ranking executives has been dumped to lieutenant's rank and assigned to work in a district station — a dramatic demotion that insiders say was ordered directly by Mayor Lori Lightfoot.



**Daniel Godsel oversees a protest last summer as a CPD deputy chief. | CPD**

Daniel Godsel, a 29-year veteran of the department, served 13 months as deputy chief of CPD's Training and Support Group, where his duties included overseeing the Chicago police academy. But that all ended Friday evening when he learned that he's a lieutenant again — and he should start reporting to work at the Calumet police

# Mayor sends deputy chief in charge of CPD academy "to the moon" in another dramatic demotion

March 1, 2021 8:28 PM CWBChicago

One of the Chicago Police Department's highest-ranking executives has been dumped to lieutenant's rank and assigned to work in a district station — a dramatic demotion that insiders say was ordered directly by Mayor Lori Lightfoot.

Daniel Godsel oversees a protest last summer as a CPD deputy chief. | CPD

Daniel Godsel, a 29-year veteran of the department, served 13 months as deputy chief of CPD's Training and Support Group, where his duties included overseeing the Chicago police academy. But that all ended Friday evening when he learned that he's a lieutenant again — and he should start reporting to work at the Calumet police district on the Far South Side.



https://cdn.jwplayer.com/p
reviews/Yr5fFoQY

CPD spokespersons twice refused to comment on Godsel's status over the weekend. A third inquiry after the department announced Godsel's replacement on Monday morning went unanswered until shortly before 8 p.m. when a spokesperson confirmed Godsel's new assignment.

In the course of the day on Friday, Godsel went from reporting to CPD's

number-two ranking officer to being one of many lieutenants working in the Calumet district.

The department refused to comment about the leadership change or why Godsel was given a so-called "hard landing." But multiple sources said the reassignment order came directly from Lightfoot and is likely connected to her dissatisfaction with the academy and a lack of progress toward meeting the requirements of a federal consent decree.

The training division plays a crucial role as CPD works toward complying with the consent decree. Active officers must be taught new procedures and policies. Meanwhile, new curriculums have to be created for cadets.

Two sources said Lightfoot is not happy with the department's progress in meeting consent decree requirements.

CPD.officers have long derided the department's academy as ineffectual, poorly-run, and a hotspot for sexual misconduct where veteran officers troll recruits. But those issues were well known before Godsel's arrival in January 2020.

The academy has "been run into the ground…it's unbelievable," one department source said.

On Monday, CPD announced the promotion of Cmdr. Antoinette Ursitti to take Godsel's place.

Godsel is not the first high-ranking CPD executive to get launched by Lightfoot.

Last May, the commander in charge of the department's narcotics

division was reduced to lieutenant and assigned to work the overnight shift in a police district that was 23 miles from his home.

Godsel's new assignment will have him driving at least 15 miles from his home to the Far South Side.

Ronald Kimble's demotion came after he stood up for his unit's performance during a conference call that included Lightfoot and Supt. David Brown, who had recently taken over leadership of the department.

Kimble's boss in narcotics, Deputy Chief William Bradley, was also returned to the rank of lieutenant and sent to work in a district on the Northwest Side.

**Back CWB's reporting team and we'll reward you with members-only reports and services all year long. Join HERE for just $49 a year.**



DEPARTMENT OF LAW

CITY OF CHICAGO

June 14, 2019

Jacqueline A. Watkins
1727 W. 107th Street
Chicago, IL 60643

Dear Ms. Watkins,

This letter is in response to the letter you sent Mayor Lori Lightfoot on May 21, 2019. The Law
Department has been asked by the Mayor's Director of Correspondence to respond to your letter.

As you know, Ms. Watkins, and as you mentioned in your letter, there is a pending federal court
lawsuit pending before Judge Edmond Chang. *Watkins v. City of Chicago*, 17 C 2028. As is
your right, you are actively suing your employer, the City of Chicago. At this time the City of
Chicago is preparing a motion for summary judgment to which you will need to respond.

Therefore, it would not be appropriate for the City's leaders to respond to allegations you raise in
your letter as most if not all of those allegations are the subject of the active litigation.

Sincerely,

/s/ *Susan M. O'Keefe*

Susan M. O'Keefe
*Deputy Corporation Counsel*
30 North LaSalle Street, Suite 1020
Chicago, Illinois 60602
Susan.O'Keefe@cityofchicago.org

121 NORTH LASALLE STREET, SUITE 600, CHICAGO, ILLINOIS 60602

BUREAU OF PROFESSIONAL STANDARDS
Internal Affairs Division

11 September 2008

TO: Commanding Officer
Unit 022

FROM: Tina Skahill
Chief

SUBJECT: Log Number 1019842

REFERENCE: Department Notice 06-37

Complaint Log Number 1019842 has been assigned to your unit or investigation. **THIS COMPLAINT AGAINST DEPARTMENT MEMBER MUST BE INVESTIGATED.** Immediately upon receipt of this complaint, kindly provide the information listed below and return this to the Internal Affairs Division, Records Section. Retain a copy of this information for your records. Should you have any questions, contact the Internal Affairs Division, Records Section at Pax 0603 or Bell 5-6324.

INVESTIGATOR ASSIGNED (last, first name): _Shinn, Derrick_

STAR/EMPLOYEE: _#2207_

UNIT: _022_

DATE AND TIME ASSIGN03ED: _16 Sept 08 - 1900 Hrs._

Tina Skahill
Chief
Internal Affairs Division

TS/lbr

022ND DISTRICT                                                    10 OCTOBER 2008
PATROL DIVISION


TO                  Commander Michael T. Kuemmeth
                    District Commander, 022ND District

FROM:               Sergeant Derrick Shinn, Star 2207
                    Third Watch Supv., 022ND District

SUBJECT:            **Reassign Complaint Log #1019842 to Internal Affairs Division.**


R/Sgt was assigned investigation 16 Sep 08 and proceeded with investigation obtaining to-from reports from the accused members. On 02 Oct 08 , accused member, Jacqueline Watkins #16919 submitted to me a report that the complainant, Sgt. Francis Higgins #1667 made a false accusation against the accused members and related that his reason for false accusation was racial bias. I have found no evidence during my investigation to support this allegation against Sgt. Higgins.

R/sgt is requesting to have this investigation returned to the Internal Affairs Division based on the counter allegation against Sgt. Higgins. Internal Affairs Division investigates all discrimination allegations.

Notification: I.A.D.  Lt. Konow #209.


Sgt. Derrick Shinn, Star 2207

Approved:

Bureau of Internal Affairs                                          17 October 2011
Investigations Division                                            CL 1019842
Special Investigation Section


To:          Lieutenant Karen KONOW #209
             Commanding Officer
             Special Investigation Section
             Bureau of Affairs

From:        Sergeant Jamie KANE #1194
             Special Investigation Section
             Bureau of Internal Affairs

Subject:     Approval of Complaint Log 1019842


        The attached Complaint Log Number has been completed and is submitted for
your approval.


                                              Sergeant Jamie KANE #1194
                                              Special Investigation Section
                                              Bureau of Internal Affairs


Lieutenant Karen KONOW #209
Commanding Officer
Special Investigation Section
Bureau of Internal Affairs

Bureau of Internal Affairs
Investigations Division
Special Investigation Section

17 October 2011
CL 1019842

To: Lieutenant Karen KONOW #209
Commanding Officer
Special Investigation Section
Bureau of Affairs

From:

Subject: Approval of Complaint Log 1019842

The attached Complaint Log Number has been completed and is submitted for your approval.



Special Investigation Section
Bureau of Internal Affairs

Lieutenant Karen KONOW #209
Commanding Officer
Special Investigation Section
Bureau of Internal Affairs

## NOTICE OF JOB OPPORTUNITY FOR POLICE OFFICER
### Office of Reform Management
### Office of the Superintendent

**General Description of the Position**: The Office of Reform Management (ORM) was established in 2018 to facilitate the development, management, and implementation of policies and programs on behalf of the Superintendent. For example, ORM logistically supported the Education and Training Division in providing the 16 hour Force Mitigation training course to all full-duty sworn members in 2018. Job responsibilities for police officers assigned to the Office of Reform Management – Unit 134 may include, but are not limited to:

1) Informing the creation of project plans and charters by providing information based upon law enforcement experience and knowledge of Department operations and procedures;
2) Working with civilian project managers to track and maintain the status of various projects;
3) Communicating at least weekly with Accountable (command staff level) and Responsible (usually supervisory level) project owners to facilitate progress on projects;
4) Planning working group meetings for assigned consent decree and strategic plan subjects;
5) Chairing meetings with the relevant Accountable and Responsible project owners;
6) Advising on and informing the creation of presentation materials for internal stakeholders;
7) Assisting auditing and analytics team members in interpreting and understanding Department data, processes, and procedures;
8) Advising on creation and execution of Office of Strategy audits and compliance measurements; and
9) Providing recommendations informed by operational experience on implementation strategies.

**Important Note: Please review the minimum requirements below. Applications from candidates who do not meet the minimum requirements of the position will not be processed.**

**Minimum Qualifications by the Close of the Application Period:**

- Full-duty status
- Three years in grade
- Have an acceptable disciplinary record
- Have no outstanding debt to the City of Chicago
- Meet acceptable guidelines for medical roll usage
- Meet acceptable attendance guidelines
- Attainment of a bachelor's degree from an accredited college or university

**Desired Qualifications:**

In addition to meeting the minimum qualifications, special consideration may be given to applicants who meet the following desired qualifications:
- Proficient with Department computer applications and Microsoft Office Suite (Outlook, Word, Excel, and PowerPoint)
- Crisis Intervention Team (CIT) trained
- Able to successfully collaborate with Department members from a different team, watch, or unit to achieve objectives
- Possess a minimum of seven (7) years of experience in district law enforcement operations
- Possess an advanced degree (Juris Doctor, master's degree, etc.)
- Able to lead meetings involving members of all ranks, including command staff
- Able to reduce complex problems into a series of smaller, manageable tasks

## NOTICE OF JOB OPPORTUNITY FOR POLICE OFFICER
### Office of Reform Management
### Office of the Superintendent

**By submitting an application, applicants agree to the following conditions:**

- The applicant is willing and able to change watches as required
- The applicant is willing and able to change day off groups as required
- The applicant is willing and able to reschedule furloughs as required

**Interested members will submit the following:**

- A completed online application;
- A current resume;
- A one-page cover letter explaining why the applicant is interested in working in the Office of Reform Management and any experience with the listed desired qualifications;
- Academic transcripts documenting completion of an undergraduate degree; and
- If applicable, academic transcripts documenting any postgraduate coursework.

The application is available on the Department intranet. It can be obtained from the Department's "Intranet Services" main page by selecting Bureau Sites, then under Bureau of Organizational Development select Human Resources Division, and then select "NOTICE OF JOB OPPORTUNITY FOR POLICE OFFICER, OFFICE OF REFORM MANAGEMENT."

Questions regarding the application process can be directed to the Human Resources Division, Career Development Section at 312-745-5318.

All required documents must be received by the Human Resources Division, Employment Section, at 3510 S. Michigan, Room 4077NE, **no later than 1500 hours on 28 Feb 2020.** It is the applicant's responsibility to ensure that packets are complete. Human Resources will accept application packets and provide a receipt. Once the application period is closed, packets will be reviewed. **Only complete packets will be forwarded to the hiring unit.**



04.06.2022

Medical Section/Human Resources Division of Chicago Police Dept:

My name is Claude L. King, and I am a Licensed Clinical Professional Counselor (LCPC) practicing in Chicago, IL. I have been working with Jacquelin "Jackie" Watkins for 3 years. For the past two years Jackie has been severely impacted by work related stress that has caused her to develop an anxiety disorder and distrust of the intentions of her colleagues. The precipitating factors that have led to this diagnosis are the following: false allegations towards her, retaliation, being socially ostracized from the rest of her unit, and disrespect from her supervisor and colleagues. Jackie has been actively attending therapy to help regulate her mood and symptomology as well learn and implement strategies to navigate her stressful work environment. Jackie made significant progress in this regard which has allowed her to maintain a moderate level of functioning. However during the last year, the culminative effect of her work environment and mistreatment led to serious health issues an unstable emotional state.

At this time this writer is recommending that Jackie be released to return to work April, 18th, 2022 on a limited duty basis for approx. 9-12 months. This will provide a safe space for Jackie to continue working, away from the triggers of her current unit. Jackie expressed to me that Unit 376 would provide a stable environment in which she could work in isolation and complete reports in addition to other miscellaneous duties. During this time, Jackie will continue receiving therapy from this writer to address the aforementioned treatment issues.

Requested Restrictions: New working environment, work in isolation, no group meetings or assignments, very minimal contact with coworkers.

*Cla L. King, LCPC*

Claude L. King, LCPC

License #: 180.011219

Owner of CK PSYCH PLLC

Clk.therapist@gmail.com

www.ckpsych.com

10725 S. Western Ave., Chicago, Illinois 60643



10725 S. Western Ave. Chicago, IL., 60643
630.474.2557
clk.therapist@gmail.com

May 31st, 2023

To whom it may concern:

I am writing to you in my capacity as a Licensed Clinical Professional Counselor in Chicago, Illinois, regarding my esteemed client, Jacqueline Watkins. I have been providing her with weekly therapy to address issues related to her diagnosis **of F43.23 Adjustment Disorder with Anxiety** and I have recently conducted a thorough evaluation of her mental health status. Based on my professional judgment, I strongly recommend that she be granted medical leave from **June 1 to August 16th**, to ensure the stabilization of her mental health.

It is imperative that Jacqueline receives the necessary time and care to address her mental health needs and make a full recovery. As her treating clinician, I believe that this leave will enable her to receive the appropriate medical attention and will improve her chances of returning to work with a stronger and healthier mental state.

Thank you for your time and consideration. Please do not hesitate to contact me if you require further information.

Sincerely, *Claude L. King* LCPC

Claude L. King, Licensed Clinical Professional Counselor.

Claude L. King, LCPC
License #: 180.011219
Owner/Psychotherapist of CK Psych LLC Clk.therapist@gmail.com
www.ckpsych.com

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 6.2.2**
**Eastern Division**

Jacqueline A Watkins

       Plaintiff,

v.              Case No.: 1:17−cv−02028
              Honorable Edmond E. Chang

City Of Chicago, et al.

       Defendant.

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Monday, April 15, 2019:

   MINUTE entry before the Honorable Edmond E. Chang: Plaintiff Watkins emailed the courtroom deputy directly, although for now she is still represented by counsel and also the email appears to be ex parte (meaning it was not sent to Defendant, and indeed probably not to Plaintiff's counsel). The email states, among other things, that Plaintiff has not yet heard from the lawyers about the ongoing settlement discussion, and to ask that the status hearing be postponed. Other matters were discussed, including dissatisfaction with both sets of counsel, but in light of the settlement discussion, it is best if those remain off−the−record (at least for now). The Court will forward the email, however, to counsel of record to avoid ex parte communication. The Court notes that the defense lawyer might still be checking on the personnel issue explored during the settlement discussion of 04/03/2019. In any event, however, the motion hearing of 04/29/2019 is accelerated to 04/17/2019 at 12 p.m., because the reasons that Plaintiff cites for a postponement are not likely sufficient and it appears that, in fact, the litigation might need to continue sooner rather than later.Emailed notice(slb, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

From: **Jacqueline Watkins** Jacquelinegl@comcast.net
Subject: **Re: Request Court date changed until after the swearing in of New Mayor Lori Lightfoot**
Date: **Apr 16, 2019 at 11:43:45 PM**
To: Sandra_Brooks@ilnd.uscourts.gov

Got it!! Thank you, I will be in court tomorrow @Noon

Sincerely, 😄
Jackie

Sent from my iPhone

On Apr 15, 2019, at 11:11 AM, Sandra_Brooks@ilnd.uscourts.gov wrote:

**Notice of Electronic Filing**

The following transaction was entered on 4/15/2019 at 11:10 AM CDT and filed on 4/15/2019

| | |
|---|---|
| **Case Name:** | Watkins v. City Of Chicago et al |
| **Case Number:** | 1:17-cv-02028 |
| **Filer:** | |
| **Document Number:** | 78 |

**Docket Text:**
**MINUTE entry before the Honorable Edmond E. Chang: Plaintiff Watkins emailed the courtroom deputy directly, although for now she is still represented by counsel and also the email appears to be ex parte (meaning it was not sent to Defendant, and indeed probably not to Plaintiff's counsel). The email states, among other things, that Plaintiff has not yet heard from the lawyers about the ongoing settlement discussion, and to ask that the status hearing be postponed. Other matters were discussed, including dissatisfaction with both sets of counsel, but in light of the settlement discussion, it is best if those remain off-the-record (at least for now). The Court will forward the email, however, to counsel of record to avoid ex parte communication. The Court notes that the defense lawyer might still be checking on the personnel issue explored during the settlement discussion of 04/03/2019. In any event, however, the motion hearing of 04/29/2019 is accelerated to 04/17/2019 at 12 p.m., because the reasons that Plaintiff cites for a postponement are not likely sufficient and it appears that, in fact, the litigation might need to continue sooner**

**rather than later. Emailed notice(slb, )**

From: Jacqueline Watkins <Jacquelinegl@comcast.net>
To: Sandra_Brooks@ilnd.uscourts.gov
Date: 04/13/2019 07:15 PM
Subject: Request Court date changed until after the swearing in of New Mayor Lori Lightfoot

Hello Deputy Sandra Brooks!!!

I know that I'm being EXTREMELY worrisome and I do apologize but my communicating to you is my only hope to justice. Judge Chang kindly informed the City Attorney Howard Levine, Jill Willis and myself to do a conference call but this have not happened and both of them are playing games with me. I just don't trust neither one of them. I am **PLEASE** requesting if Judge Chang can consider changing my return court date after May 20th, so the new Mayor Lori Lightfoot can be abreast and have to sign off whatever the agreed Settlement is going to be. I actually sent Mayor Rahm Emanuel a certified letter in 2016 explaining how Sgt. Francis Higgins falsely obtained a complaint against me, discriminated against, covered up the findings and sent pertinent facts and evidence but I never heard from his office. In addition to the fact that Rahm Emanuel hired his own corrupt Legal Team to represent Chicago Corporation Counsel. Now, Rahm Emanuel is pressing the issue of suing Jussie Smollett for lying to CPD, this is kinda like the pot is calling the kettle black. I'm very disappointed in the Emanuel Administration and hoping and praying that Mayor Elect Lori Lightfoot will intervene as I also wrote her also in 2016 concerning this exact case and other unscrupulous behavior of CPD when she was over CPD Task Force working with the DOJ to implement changes within CPD. I am aware and know that Judge Chang is helping me beyond measure, because I sense that he realizes that my Attorney screwed me case and it seem that she did it intentionally and not out of ignorance. Please inquire if Judge Chang can **PLEASE** push back my return court date after May 20th, so that Mayor Elect Lori Lightfoot can take office. Thanks Again & Many Many Blessings...

Thank You & Sincerely, 😃
Jackie
773-562-0167
Jacquelinegl@comcast.net



**Brandon Johnson**
Mayor

**Department of Police · City of Chicago**
3510 S. Michigan Avenue · Chicago, Illinois 60653

**Larry Snelling**
Superintendent

4/17/2024
2024-0003452

JACQUELINE WATKINS
1727 W. 107TH ST
CHICAGO, IL 60643

Dear Jacqueline Watkins:

The Bureau of Internal Affairs has conducted a preliminary review of your complaint. The complaint has been assigned for further investigation pursuant to the above-referenced log number. Please reference this log number when seeking information. An investigator will contact you to provide further details.

Any questions or additional information may be directed to Sergeant Keshia Frierson of the Bureau of Internal Affairs-Intake Section at (312) 745-6328.

Sincerely,

Levester Denham
Commander
Bureau of Internal Affairs



**Department of Police * City of Chicago**
3510 South Michigan Avenue * Chicago, Illinois 60653

Date  23 APR 2024

Re: Log No.  2024-0003452

**Dear** JACQUELINE WATKINS

**A complaint against a Department member, registered under the above Log Number, is currently under investigation by the Chicago Police Department.**

**A vital step in the investigation is an interview with the person who registered the complaint as well as witnesses. This step is essential in order to conduct a complete and thorough investigation.**

**Please contact me as soon as possible so that I can make arrangements to meet with you regarding the incident under investigation. The following information is provided so that you can contact me without unnecessary inconvenience:**

**Name:** Sgt. Marcus Broadway #2395

**Address:** 3510 S Michigan

**Telephone:** 312-745-6310  x85047

**Hours Available:** TUES. - SAT. 7:00AM - 3:00PM

Sincerely,

Sgt. Marcus Broadway #2395

CPD-44.223 (REV. 8/16)

From: **Watkins, Jacquelin A.** Jacquelin.Watkins@chicagopolice.org
Subject: **Fwd: 2020-0005000 - Notification of Charges/Allegations**
Date: **Jul 16, 2023 at 8:34:50 PM**
To: **Jacqueline Watkins** Jacqueline1@comcast.net

"The time is always Right to do what is Right." Dr. Martin Luther King Jr.

---

**From:** BIA Case Management <CaseManagement@chicagopolice.org>
**Sent:** Friday, November 20, 2020 11:00 AM
**To:** Watkins, Jacquelin A. <Jacquelin.Watkins@chicagopolice.org>
**Cc:** 143Correspondence <143Correspondence@chicagopolice.org>
**Subject:** 2020-0005000 - Notification of Charges/Allegations

Log No: 2020-0005000 Type: Information/Complaint

Notification of Charges/Allegations for JACQUELIN A WATKINS
ADMINISTRATIVE PROCEEDINGS RIGHTS (Statutory)
Your appearance is required at:
BUREAU OF INTERNAL AFFAIRS
3510 SOUTH MICHIGAN AVE
5th FLOOR
CHICAGO, IL 60653
(312) 745-6310
Investigator: MARK A LAMBERG
Date:09 Dec 2020
Time: 1300 hours
**If the requested member is not available due to being on medical, furlough, transfer, etc., the Assigned Supervisor will reply to this email providing the following information:**

- Reason for member's unavailability
- Supervisor's Name and Star No.

The law provides that you are to be advised of the following:

1. Any admission or statement made by you in the course of this hearing, interrogation or examination may be used as the basis for your suspension or as the basis for changes seeking your removal or discharge or suspension in excess of 30 days.
2. You have the right to counsel of your choosing to be present with you to advise you at this hearing, interrogation or examination and you may consult with him as you desire.
3. You have a right to be given a reasonable time to obtain counsel of your own choosing.

4. You have no right to remain silent. You have an obligation to truthfully answer questions put to you. You are advised that your statements or responses constitute an official police report.

5. If you refuse to answer question put to you, you will be ordered by a superior officer to answer the questions.

6. If you persist in your refusal after the order has been given to you, you are advised that such refusal constitutes a violation of the Rules and Regulations of the Chicago Police Department and will serve as a basis for which your discharge will be sought.

7. You are further advised that by law any admission or statement made by you during the course of this hearing, interrogation or examination and the fruits hereof cannot be used again you in a subsequent criminal proceeding.

The law provides that if you are to be charged with a criminal offense or if your separation from the Department will be sought, you are to be advised in writing of the specific illegal or improper acts alleged against or attributed to you.

Furthermore, Department policy provides that you have a right to be advised in writing of the names of reporting parties and allegations against you prior to any questioning of you concerning the allegation regardless of the nature of the allegation and even if the allegation is such that it will not result in the filing of criminal charges or the filing of separation charges.

Accordingly, you are hereby advised that the following allegations have been attributed to you:

**CHARGES/ALLEGATIONS**

For questions regarding this communication, contact Investigator MARK A LAMBERG at (312) 745-6310.

## Reporting Parties

| Name | Star No. | Emp No. | Unit No. | Position | Sex | Race |
|------|----------|---------|----------|----------|-----|------|
| JACQUELIN WATKINS | 16919 | 28795 | 143 | POLICE OFFICER | | BLK |
| Jacqueline Watkins | | | | | | |

## Allegation(s)

| Sequence No. | Allegation |
|--------------|------------|

## Incident Address

| Incident Date/ Time | Address of Incident |
|---|---|
| | Unknown CHICAGO, IL |

Waiver of Counsel/Request to Secure Counsel

WAIVER OF COUNSEL/ACKNOWLEDGEMENT OF ALLEGATIONS

I acknowledged that having been advised of my right to counsel of my choosing, I have received and read the charges/allegations against me, and I knowingly and voluntarily wish to proceed with the hearing, examination, or interrogation without having counsel present to advise me. I acknowledge that I must appear at this hearing, examination, or interrogation at the above listed date and time.

REQUEST TO SECURE LEGAL COUNSEL/ACKNOWLEDGEMENT OF ALLEGATIONS

I have acknowledged that having been advised of my right to counsel of my choosing, I have received and read the charges/allegations against me, and I elect to secure the services of counsel at the hearing, examination, or interrogation. I acknowledge that I must appear at this hearing, examination, or interrogation at the above listed date and time.

** EXTERNAL EMAIL WARNING ** This email originated outside of the Chicago Police Department. **NEVER CLICK, DOWNLOAD, or OPEN** unexpected links or attachments. **NEVER** provide User ID (PC Number) or Password or other sensitive information. If this email seems suspicious, contact the City of Chicago Help Desk at 312-744-DATA (312-744-3282) or follow instructions on THE WIRE to report Junk Email or SPAM.

---

This e-mail, and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail (or the person responsible for delivering this document to the intended recipient), you are hereby notified that any dissemination, distribution, printing or copying of this e-mail, and any attachment thereto, is strictly prohibited. If you have received this e-mail in error, please respond to the individual sending the message, and permanently delete the original and any copy of any e-mail and printout thereof.

From: **CaseManagement** CaseManagement@chicagopolice.org
Subject: **2020-0005000 - UNDER INVESTIGATION Email_Key: AGGAA5V0GO1YCARYGSVYRXGL13MDS0**
Date: **Jul 22, 2023 at 3:06:53 AM**
To: **jacquelinegl@comcast.net**

To reply to this email please click here.

Re: Log No. 2020-0005000

Incident Date:

Today's Date: 7/22/2023

Dear Jacqueline Watkins

The Bureau of Internal Affairs (BIA) is continuing to investigate the above-referenced complaint. Pursuant to Chicago Police Department Special Order 08-01, BIA is required to notify certain parties, if BIA has not completed an investigation within 180 days of the date the complaint was submitted, and thereafter at least once every 60 days. We are working diligently to complete our investigation.

Once BIA completes its investigation into the above referenced matter, you will receive a letter detailing our findings.

Bureau of Internal Affairs

3510 S Michigan

Chicago, Il 60653

(312) 745-6310

---

This e-mail, and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail (or the person responsible for delivering this document to the intended recipient), you are hereby

From: **CaseManagement** ⟨CaseManagement@chicagopolice.org⟩
Subject: **2020-0005000 - UNDER INVESTIGATION Email_Key:**
**AGGAA5V0GO1YCAS0OSV7SJOF7BARS0**
Date: **Mar 21, 2024 at 2:52:10 AM**
To: **jacquelinegl@comcast.net**

To reply to this email please click here.
Re: Log No. 2020-0005000
Incident Date:
Today's Date: 3/21/2024

Dear Jacqueline Watkins
The Bureau of Internal Affairs (BIA) is continuing to investigate the above-referenced complaint. Pursuant to Chicago Police Department Special Order 08-01, BIA is required to notify certain parties, if BIA has not completed an investigation within 180 days of the date the complaint was submitted, and thereafter at least once every 60 days. We are working diligently to complete our investigation.

Once BIA completes its investigation into the above referenced matter, you will receive a letter detailing our findings.

Bureau of Internal Affairs
3510 S Michigan
Chicago, Il 60653
(312) 745-6310

---

This e-mail, and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail (or the person responsible for delivering this document to the intended recipient), you are hereby

**CaseManagement** CaseManagement@chicagopolice.org

2020-0005000 - UNDER INVESTIGATION Email_Key:
AGGAA5V0GO1YCASH9WZNSG92X2ZXQT

Jan 20, 2024 at 2:59:18 AM

jacquelinegl@comcast.net

To reply to this email please click here. Re: Log No. 2020-0005000
Incident Date:
Today's Date: 1/20/2024

Dear Jacqueline Watkins

The Bureau of Internal Affairs (BIA) is continuing to investigate the above-referenced complaint. Pursuant to Chicago Police Department Special Order 08-01, BIA is required to notify certain parties, if BIA has not completed an investigation within 180 days of the date the complaint was submitted, and thereafter at least once every 60 days. We are working diligently to complete our investigation.

Once BIA completes its investigation into the above referenced matter, you will receive a letter detailing our findings.

Bureau of Internal Affairs
3510 S Michigan
Chicago, Il 60653
(312) 745-6310

---

This e-mail, and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail (or the person responsible for delivering this document to the intended recipient), you are hereby notified that any dissemination, distribution, printing or copying of this e-mail, and any attachment thereto, is strictly prohibited. If you have received this e-mail in error, please respond to the individual sending the message, and permanently delete the original and any copy of any e-mail and printout thereof.

From: **Watkins, Jacquelin A.** Jacquelin.Watkins.@chicagopolice.org
Subject: **Fwd: 2020-0005000 - UNDER INVESTIGATION Email_Key: AGGAA5V0GO1YCARVBUIDRUBQ8PKRP8**
Date: **Jul 16, 2023 at 8:28:30 PM**
To: **Jacqueline Watkins** Jacquelinegh@comcast.net

"The time is always Right to do what is Right." Dr. Martin Luther King Jr.

---

**From:** CaseManagement <CaseManagement@chicagopolice.org>
**Sent:** Monday, May 22, 2023 3:13 AM
**To:** Watkins, Jacquelin A. <Jacquelin.Watkins@chicagopolice.org>
**Subject:** 2020-0005000 - UNDER INVESTIGATION Email_Key:
AGGAA5V0GO1YCARVBUIDRUBQ8PKRP8

To reply to this email please click here.
Re: Log No. 2020-0005000
Incident Date:
Today's Date: 5/22/2023

Dear JACQUELIN WATKINS
The Bureau of Internal Affairs (BIA) is continuing to investigate the above-referenced complaint. Pursuant to Chicago Police Department Special Order 08-01, BIA is required to notify certain parties, if BIA has not completed an investigation within 180 days of the date the complaint was submitted, and thereafter at least once every 60 days. We are working diligently to complete our investigation.

Once BIA completes its investigation into the above referenced matter, you will receive a letter detailing our findings.

Bureau of Internal Affairs
3510 S Michigan



May 19th, 2024

Dear Jury Duty Exemption Board,

I am writing to advocate for the exemption of Jacqueline (Jackie) Watkins from jury duty, on May 31st, 2024, based on her diagnosed anxiety disorder. Ms. Watkins recently been evaluated by me, a clinical therapist, and is diagnosed with (F41.1) Generalized Anxiety Disorder. Individuals with anxiety disorders, especially Generalized Anxiety Disorder, often experience heightened levels of stress and discomfort in situations involving unfamiliar people and environments. Being surrounded by strangers in a jury duty setting could potentially exacerbate her symptoms, leading to increased anxiety, distress, and potential panic attacks. To ensure Ms. Watkins' mental well-being and prevent any undue stress or harm to herself and the judicial process, it is imperative that she be excused from jury duty obligations. Your understanding and consideration in this matter are deeply appreciated

Sincerely,

Claude L. King, LCPC

*Clau L K LCPC*

License #: 180.011219
Owner/Psychotherapist of CK Psych PLLC
Workplace Support Consultant (EAP)
Cell: 630.474.2557
clk.therapist@gmail.com
www.ckpsych.com

From: **CaseManagement** CaseManagement@chicagopolice.org
Subject: **2020-0005000 - UNDER INVESTIGATION Email_Key:**
**AGGAA5V0GO1YCAS3TR9IS2SZ587HOB**
Date: **May 21, 2024 at 2:55:07 AM**
To: **Jacquelinegl@comcast.net**

To reply to this email please click <u>here</u>.

Re: Log No. 2020-0005000

Incident Date:

Today's Date: 5/21/2024

Dear Jacqueline Watkins

The Bureau of Internal Affairs (BIA) is continuing to investigate the above-referenced complaint. Pursuant to Chicago Police Department Special Order 08-01, BIA is required to notify certain parties, if BIA has not completed an investigation within 180 days of the date the complaint was submitted, and thereafter at least once every 60 days. We are working diligently to complete our investigation.

Once BIA completes its investigation into the above referenced matter, you will receive a letter detailing our findings.

Bureau of Internal Affairs

3510 S Michigan

Chicago, Il 60653

(312) 745-6310

8:35

## Re: New Clicker

 **Cho, Susan A.**　　　　　　9:19 AM
To CIT Training Members　　　· · ·

Good Morning,

Apparently, someone walked off with our clicker last week (as well as Joaquin's personal one that we were using for a while). Who should we talk to about ordering two new ones - one for the unit and another one to replace Joaquin's?

P.O. Susan Cho

Crisis Intervention Unit - 143

1300 W Jackson Blvd

susan.cho@chicagopolice.org

---

This e-mail, and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail (or the person responsible for delivering this document to the intended recipient), you are hereby notified that any dissemination, distribution, printing or copying of this e-mail, and any attachment thereto, is strictly prohibited. If you have received this

《\ ∨　Reply to All


Mail

Search


Calendar

**8:36**  ·ıl 🛜 ⬛)

<  · · ·  🗑  🗑

 **Ursitti, Antoinett M.**     10:14 AM
To Cho, Susan A., CIT Training Members, +1  · · ·

Sgt Hamad, can you assist CIT with this issue? Sue, I have a clicker available in the interim if you want to come get it. Thank you.

Antoinette Ursitti
Deputy Chief
Training and Support Group
Office of Constitutional Policing and Reform
312.746.8310 (Office)
312.285.1383 (Cell)

o o o

**Schuler, Joseph A.**     10:18 AM
To Ursitti, Antoinett M., Cho, Susan A., +2  · · ·

**Sergeant Bugarin was going to check with procurement.**

Joseph Schuler
Lieutenant
**CIT Coordinator**
Crisis Intervention Team - Unit 143
312- 746-8310 Ext 160
312-285-8642

o o o

**Hamad, Mariam**     10:41 AM

« ⌄   Reply to All


Mail


Search


Calendar

**8:36**



**Hamad, Mariam** 10:41 AM
To Schuler, Joseph A., Ursitti, Antoinett M., +2 ⋯

Sure come see me, Mimi

Thank you,
Mariam Hamad
Commanding Officer
Procurement
Chicago Police Department
Office of Constitutional Policing and Reform
Training and Support Group
Office: 312-746-8310 ext 239
Cell: 312-237-5936

*"I've learned that people will forget what you said, people will forget what you did, but people will never forget how you made them feel." — Maya Angelou*



**Bugarin, Myrian M.** 10:52 AM
To Hamad, Mariam, Schuler, Joseph A., +3 ⋯

Thank you Mariam!

Myrian Bugarin
Sergeant #2492
003rd District
Chicago Police Department

◁ ⌄  Reply to All



Mail          Search          Calendar

Case: 1:24-cv-04467 Document #: 1 Filed: 05/30/24 Page 75 of 93 PageID #:75



NOT Marie Crump CIT

**New name and photo available**
Marie Crump      Update

Dec 19, 2022 at 5:01 PM

Jackie do you still get CIT emails?

Dec 19, 2022 at 8:26 PM

> Heyy Girl!! Sorry for late response...
> I'm in Vegas visiting my cousin...
> Yup I get CIT emails

Ok....I was just going to say....you
seen Ursitti responded to Sue

> Let me look at my email..

Sue huffing and puffing about the
clicker being stolen and Joaquin's
clicker was stolen too

> No, I did not get this email... Sue
> must have did a non cit email

> I'm curious can you screenshot it

**Watkins, Jacquelin A. <jacquelin.watkins@chicagopolice.org>**                8/14/2023 6:13 AM

# Fwd: Overtime Opportunity: Recruit Processing - Saturday, 08 July 2023

To Jacqueline Watkins <jacquelinegl@comcast.net>

"The time is always Right to do what is Right." Dr. Martin Luther King Jr.

**From:** Watkins, Jacquelin A. <Jacquelin.Watkins@chicagopolice.org>
**Sent:** Thursday, August 3, 2023 3:54 AM
**To:** Jacqueline Watkins <Jacquelinegl@comcast.net>
**Subject:** Fwd: Overtime Opportunity: Recruit Processing - Saturday, 08 July 2023

"The time is always Right to do what is Right." Dr. Martin Luther King Jr.

**From:** Watkins, Jacquelin A. <Jacquelin.Watkins@chicagopolice.org>
**Sent:** Sunday, July 16, 2023 8:40 PM
**To:** Jacqueline Watkins <Jacquelinegl@comcast.net>
**Subject:** Fwd: Overtime Opportunity: Recruit Processing - Saturday, 08 July 2023

"The time is always Right to do what is Right." Dr. Martin Luther King Jr.

**From:** Frierson, Keshia <Keshia.Frierson@chicagopolice.org>
**Sent:** Thursday, July 6, 2023 9:45 AM
**To:** Thomas Jr, Larry E. <Larry.ThomasJr@chicagopolice.org>; Powell Ward, Dina M. <Dina.PowellWard@chicagopolice.org>; Otruba, Christine M. <Christine.Lode@chicagopolice.org>; Brohlin, Susan E. <Susan.Brohlin@chicagopolice.org>; Sanchez, Catherine E. <Catherine.Sanchez@chicagopolice.org>; Kochanny, Peter R. <Peter.Kochanny@chicagopolice.org>; Gentile, Michael J. <Michael.Gentile@chicagopolice.org>; Santiago, Tiffany C. <Tiffany.Santiago@chicagopolice.org>; Strazzante, Anthony R. <Anthony.Strazzante@chicagopolice.org>; Fiedler, James M. <James.Fiedler@chicagopolice.org>; Barrera, Pedro <Pedro.Barrera@chicagopolice.org>; Broadway, Marcus A. <Marcus.Broadway@chicagopolice.org>; Darko, Lawrence O. <Lawrence.Darko@chicagopolice.org>; Drzewiecki, Jeremy J. <Jeremy.Drzewiecki@chicagopolice.org>; Fabian Jr, Elmer A. <Elmer.FabianJr@chicagopolice.org>; Finegan, Thomas F. <Thomas.Finegan@chicagopolice.org>; James, Dorian P. <Dorian.James@chicagopolice.org>; Johnson, Tina C. <Tina.Johnson@chicagopolice.org>; Komosa, Evan J. <Evan.Komosa@chicagopolice.org>; Nunez, Ana L. <Ana.Nunez@chicagopolice.org>; Magallon, Rafael <Rafael.Magallon@chicagopolice.org>; Marino, Hector A. <Hector.Marino@chicagopolice.org>; Olugbala, Assata <Assata.Olugbala@chicagopolice.org>; Rhodes, Benjamin E. <Benjamin.Rhodes@chicagopolice.org>; Smith, Jimmie D. <Jimmie.Smith@chicagopolice.org>; Stanula, Joseph A. <Joseph.Stanula@chicagopolice.org>; Walton, Yolanda R. <Yolanda.Walton@chicagopolice.org>; Hosley, Annetta V. <Annetta.Hosley@chicagopolice.org>; Nikin, Dragan <Dragan.Nikin@chicagopolice.org>; Velazquez, Sergio <Sergio.Velazquez@chicagopolice.org>; Bartuch, John J. <John.Bartuch@chicagopolice.org>; Welch, Emmet <Emmet.Welch@chicagopolice.org>; Henderson, Tramell D. <Tramell.Henderson@chicagopolice.org>; Piwnicki, Gina L. <Gina.piwnicki@chicagopolice.org>; Binetti, Nerina M. <Nerina.Binetti@chicagopolice.org>; Boehm, Matthew J. <Matthew.Boehm@chicagopolice.org>; Floyd, Theresa A. <Theresa.Floyd@chicagopolice.org>; Hill, Willie J. <Willie.Hill@chicagopolice.org>; Lee, Vashaune C. <Vashaune.Lee@chicagopolice.org>; Portis, Victor A. <Victor.Portis@chicagopolice.org>; Watkins, Jacquelin A. <Jacquelin.Watkins@chicagopolice.org>; Colon, Jose D. <Jose.Colon@chicagopolice.org>; Musgraves, Maricela <Maricela.Musgraves@chicagopolice.org>; Mullings, Zoila M. <Zoila.Mullings@chicagopolice.org>; Anderson, Rory A. <Rory.Anderson@chicagopolice.org>; Mc Laurin, Angela <Angela.McLaurin@chicagopolice.org>; Sanchez, Jose L. <Jose.Sanchez1@chicagopolice.org>; Rodriguez - Wade, Marian A. <Marian.Rodriguez@chicagopolice.org>; Contreras, Renee P. <Renee.Contreras@chicagopolice.org>; Cavallone, Robert E. <Robert.Cavallone@chicagopolice.org>; Rodriguez, Orlando <Orlando.Rodriguez@chicagopolice.org>; Rivera, Mary A. <Mary.Rivera@chicagopolice.org>; Louie, Defonda J.

<Defonda.Loule@chicagopolice.org>; Gallagher, Patricia A. <Patricia.Gallagher@chicagopolice.org>; Butts, Gregory <Gregory.Butts@chicagopolice.org>; Chinchilla, Baneond O. <Baneond.Chinchilla@chicagopolice.org>; Dowling, Daniel T. <Daniel.Dowling@chicagopolice.org>; Malozzi, Jill M. <Jill.Malozzi@chicagopolice.org>; Morris, Jennifer R. <Jennifer.Morris@chicagopolice.org>

Cc: Talley, Yolanda L. <Yolanda.Talley@chicagopolice.org>; Curry, Cynthia <Cynthia.Curry@chicagopolice.org>; Walker, Traci L. <Traci.Walker@chicagopolice.org>; Denham, Levester <Levester.Denham@chicagopolice.org>; Osika, Thomas J. <Thomas.Osika@chicagopolice.org>; Schnoor, Kelly A. <Kelly.Schnoor@chicagopolice.org>; Holtkamp, Katie M. <Katie.holtkamp@chicagopolice.org>; Moore, Timothy L. <Timothy.Moore@chicagopolice.org>; Flores, Robert A. <Robert.Flores@chicagopolice.org>

Subject: Overtime Opportunity: Recruit Processing - Saturday, 08 July 2023

Good Morning -

The Random Drug Testing Unit is seeking BIA Sergeants and Police Officers to assist with Mass Screening on **Saturday, 08 July 2023**.

**Reporting Time**

1000hrs until released (by Sgt.Tippi Stennis)

**Location**

Education & Training Division

1300 W. Jackson Blvd.

**Dress Attire**

Civilian Dress: Jeans with a BIA Polo **or** the prescribed regulation field uniform.  Do not mix uniform attire.

**Response Deadline**

Members interested in volunteering must email the Undersigned **by 1500hrs today, Thursday, 06 July 2023**. PLEASE DO NOT SELECT "REPLY ALL" WHEN RESPONDING TO THIS EMAIL.

Thank you,

This e-mail, and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail (or the person responsible for delivering this document to the intended recipient), you are hereby notified that any dissemination, distribution, printing or copying of this e-mail, and any attachment thereto, is strictly prohibited. If you have received this e-mail in error, please respond to the individual sending the message, and permanently delete the original and any copy of any e-mail and printout thereof.

**Brandon Johnson**
Mayor

**Department of Police · City of Chicago**
3510 S. Michigan Avenue · Chicago, Illinois 60653

**Fred L. Waller**
Interim Superintendent

5/3/2023
2023-0001240
JACQUELINE WATKINS
1727 W 107TH ST
CHICAGO, IL 60643

The Bureau of Internal Affairs (BIA) has conducted a *preliminary* review of your complaint. The below-indicated action was taken in regard to your complaint. **If you wish to have your investigation re-opened, please submit your request in writing to BIAIntake@chicagopolice.org or via the US Postal Service at the following address: Chicago Police Department, Bureau of Internal Affairs, 3510 S. Michigan, Chicago, IL 60653. Your request will be assessed and you will be contacted as to BIA's decision. When contacting the Bureau of Internal Affairs about your complaint, please be sure to reference the log number in any communications. The log number is located above.**

## Administrative Closures

☐ The complaint was administratively closed because it involves a traffic citation, parking citation, notice of an administrative violation, summons, or an arrest and therefore, may be addressed via the judicial or administrative hearing process.

☐ The complaint was administratively closed because a preliminary investigation revealed that the accused member's actions (or actions alleged in the complaint) were in compliance with Chicago Police Department directives and its Rules and Regulations.

☐ The complaint was administratively closed because a complaint was previously filed involving the same incident.

☐ The complaint was administratively closed because you attempted to report a crime in which the accused is not a member of the Chicago Police Department. Call 911 for emergencies. For non-emergencies call 311 or report online at https://home.chicagopolice.org/services/online-crime-reporting/.

☐ The complaint was administratively closed because there is not enough information about the alleged incident in order to proceed with the investigation. If you have *further information, please contact the BIA Intake Section* (Monday-Friday, 8AM - 4PM) at 312.745.6328 or via email at BIAIntake@chicagopolice.org.

☐ The complaint was administratively closed because the incident has been referred to the Non-Disciplinary Intervention Program. Explanation of this program may be found in Special Order 08-01-08 at http://directives.chicagopolice.org/directives/.

☐ The complaint was administratively closed because it was addressed via the Summary Punishment Action Request System. Explanation of this system may be found in Special Order 08-01-05 at http://directives.chicagopolice.org/directives/.

☐ The complaint was administratively closed and referred to the unit commanding officer's office for informational purposes in Unit:     at Phone Number:

☒ **The complaint was administratively closed because the Intake Section of the Bureau of Internal Affairs has contacted you and explained the procedure for obtaining further information about your complaint.**

Page 1 of 2

The departments or agencies below may also be of assistance.

## Motor vehicle accidents involving personal injury or property damage

Chicago Claims Unit
30 N. LaSalle, Suite 800
Chicago, IL 60602
312.744.5650
https://www.chicago.gov/city/en/depts/dol/provdrs/claims.html

## Landlord – Tenant Disputes

Department of Housing
121 N. LaSalle Street, Room 1006
Chicago, IL 60602
312.744.4190
https://www.chicago.gov/city/en/depts/doh.html

## Hiring Procedures

Department of Human Resources
121 N. LaSalle Street, Room 100
Chicago, IL 60602
312.744.4966
https://www.chicago.gov/city/en/depts/dhr.html

## Mental Health Assistance

National Alliance on Mental Illness (NAMI) Chicago Helpline
Monday-Friday (9AM – 8PM) and Saturday – Sunday (9AM – 5 PM)
833.626.4244
www.namichicago.org

Any questions or information may be directed to Sergeant Keshia Frierson of the Bureau of Internal Affairs' Intake Section (Mon-Fri. 8 AM – 4 PM) at 312.745.6328 or via email at BIAIntake@chicagopolice.org.

Sincerely,

Intake Section
Bureau of Internal Affairs
Chicago Police Department



| Lori E. Lightfoot | Department of Police · City of Chicago | David O. Brown |
|---|---|---|
| Mayor | 3510 S. Michigan Avenue · Chicago, Illinois 60653 | Superintendent of Police |

June 1, 2022

<u>Via Email:</u>
Jacqueline Watkins
jacquelinegl@comcast.net

RE:     NOTICE OF RESPONSE TO FOIA REQUEST
            FOIA FILE NO.:      P752754

Dear Jacqueline Watkins:

The Chicago Police Department (CPD) is in receipt of your Freedom of Information Act (FOIA) request, received June 1, 2022 for the following:

> "I am requesting if you can please provide all documents pertaining to Log# 2020-0005000."

Your request was reviewed by the undersigned in collaboration with the Department's Bureau of Internal Affairs (BIA). A search of CPD records was conducted utilizing the provided search parameters. Upon consultation with BIA, it was determined that your request is denied.

Please be advised that log #2020-0005000 is an ongoing BIA investigation and it was determined that the requested records pertaining to this case are exempt pursuant to FOIA under exemption 7(1)(d)(i) of FOIA (5 ILCS 140/7(1)(d)(i) (West 2010), as amended by Public Acts 97-333, effective August 12, 2011; 97- 385, effective August 15, 2011; 97-452, effective August 19, 2011), which allows a public body to withhold records that would interfere with pending or actually and reasonably contemplated law enforcement proceedings conducted by the law enforcement or correctional agency that received the FOIA request and (ii), which permits the withholding of documents created in the course of an administrative enforcement proceeding to the extent that disclosure would interfere with "pending or actually and reasonably contemplated law enforcement proceedings conducted by an law enforcement or correctional agency," or "active administrative enforcement proceedings."

While responsive records were identified, disclosing these records would adversely impact an ongoing CPD investigation. In order to ascertain whether your request would interfere with an ongoing investigation, the matter was forwarded to BIA. After conducting a reasonably diligent search for records responsive to your request and consulting with BIA, CPD has determined that disclosing the responsive records would interfere or obstruct the integrity of the investigation. Disclosure of these records would directly interfere with BIA's active investigation into this matter such that their investigation is compromised if accused members, witnesses, and/or reporting parties are able to review the materials in BIA's possession, including but not limited to the statements of other accused members,  witnesses,

Emergency and TTY: 9-1-1 · Non Emergency and TTY: (within city limits) 3-1-1 · Non Emergency and TTY: (outside city limits) (312) 746-6000

E-mail: police@cityofchicago.org  · Website: www.cityofchicago.org/police

# Don't let the bosses coerce you



FERNANDO
FLORES

I hope that you and your families are doing well and are staying healthy.

"No lawyer, no statement" holds even more true as we deal with this city and its crazy policies. I've been contacted by officers stating that their supervisors, sergeants or lieutenants are basically trying to coerce them into making a written statement or an oral statement regarding a CR number or some other accusation. If this happens, ask respectfully to speak to your unit rep or your watch rep and ask for guidance or assistance in this matter.

Some of our officers are being intimidated into making a verbal statement or into writing a to/from regarding a possible investigation. Don't do it. Let the supervisor know that you are entitled to representation from your union on these matters. If there is no one available to help you at the district level, please feel free to call the union hall and ask for help.

At no point should our members be subjected to supervisors who demean and belittle them. We demand better from our white shirts and will not tolerate any actions that attempt to minimize and dehumanize them. Supervisors need to be held to a higher standard, as they are the individuals that our new police officers are looking towards for guidance and that our more experienced officers look to for assistance in some questionable situations. I know from personal experience about being charged several times with the above rule. Supervisors are not exempt from getting CR numbers placed against them.

I would like to thank the people who showed up to help us get signatures for some of our members who are going to be running for political office. The members of our Chicago Police Football Club, both civilian and sworn, and several other individuals helped in this great endeavor.

Those of us who were out there knocking on doors had to endure some pretty frigid weather and some not-so-nice individuals. In the end, the payoff for our efforts will be well worth it. Please support our fellow officers: Carolynn Crump running for state representative and Erin Jones running for state senate.

If we do not support our own members, then we have nothing to say when our elected officials turn their backs on us and tell us to go pound sand. I have been saying this for 20 years: the FOP and our Lodge should be and are becoming a political force to be reckoned with. We need our members and their families to register to vote in order to achieve our goals and get our candidates elected.

So, either get on the train or get run over by it. The only thing that politicians understand is money and votes. These politicos are sitting up and taking notice that we are coming for them and their political power. Register and get the vote out. We need to help our candidates and ourselves.

As always, be safe, stay healthy and love the ones that have meaning in your life. Hug them a little longer and tell them you love them. Life is short, and nothing is guaranteed.



# Buying or Refinancing?

## Don't Gamble! Bet on a sure thing with Mike Coyne at Blueleaf Lending.

25 years of helping Lodge 7 Members, families and friends!

20 years of helping Lodge #7 Members, their families and friends!

- Purchase or Refinance
- Debt Consolidation
- First Time Homebuyer Programs
- Down Payment Assistance Available
- Lending In Multiple States

FHA/VA/IHDA, FNMA/FHLMC
Fixed Rate or ARMs



For friendly service, low rates & fees,

Call Mike Coyne 773.250.6492  Cell 847.494.9731

email: mcoyne@blueleaflending.com  website: mcoyne.blueleaflending.com



NMLS #222935

Case: 1:24-cv-04467 Document #: 1 Filed: 05/30/24 Page 83 of 93 PageID #:82

**Watkins, Jacquelin A. <jacquelin.watkins@chicagopolice.org>**                    6/4/2023 7:30 PM

## Fwd: Supporting IG Log #2020-00050000

To Jacqueline Watkins <jacquelinegl@comcast.net>

"The time is always Right to do what is Right." Dr. Martin Luther King Jr.

From: Watkins, Jacquelin A. <Jacquelin.Watkins@chicagopolice.org>
Sent: Monday, December 21, 2020 5:44 PM
To: Konow, Karen M. <Karen.Konow@chicagopolice.org>
Cc: Skahill, Tina M. <Tina.Skahill@chicagopolice.org>; Jacqueline Watkins <Jacquelinegl@comcast.net>
Subject: Supporting IG Log #2020-00050000

Hello Chief Karen Konow,

This is P/O Jacqueline Watkins. I hope all is well. I was instructed by IAD Sgt. Mark Lamb to construct a email concerning other issues I had concerning Internal Affairs Records Division recorded under Log#2020-00050000. I have attached three (3) separate Complaints/To-From reports regarding IG Log #2020-00050000. One of the issues was addressed 08 DEC 2020, concerning reopening Log #2019-0005248. R/O requested reopening Log#2019-0005248 because R/O found inconsistencies in statements after filing a FOIA request and reviewing all documents. Please see the attached To-From statements and scanned supporting documents.

Thank you & Sincerely,
Jacqueline A. Watkins

"The time is always Right to do what is Right." Dr. Martin Luther King Jr.

- IG Log #2020-00050000.pdf (7 MB)
- Error Log 260140 20 JAN 2000.docx (18 KB)
- Review IAD File DEC 2020.docx (17 KB)



| Chicago Police Department | General Order G08-05 |
|---|---|
| **PROHIBITION OF RETALIATION** | |

| ISSUE DATE: | 30 December 2020 | EFFECTIVE DATE: | 30 December 2020 |
|---|---|---|---|
| RESCINDS: | | | |
| INDEX CATEGORY: | Professionalism | | |

## I. PURPOSE

This directive:

A.   prohibits all Department members from engaging in any form of retaliation against any Department member or member of the public,

B.   provides guidelines to Department members regarding retaliation, and

C.   outlines the responsibilities for reporting and investigating allegations of retaliation.

## II. RELATED LAWS

A.   MCC 2-156-018 "Duty to Report Corrupt or Unlawful Activity"

B.   MCC 2-156-019 "Whistleblower Protection"

C.   MCC 2-160 "Human Rights"

D.   MCC 2-160-100 "Retaliation Prohibited"

E.   775 ILCS 5/6-101(A) "Retaliation" (Illinois Human Rights Act)

## III. POLICY

A.   Department members will:

    1.   act with a high degree of ethics, professionalism, and respect for the public and in a manner that promotes trust between the Department and the communities that it serves.

    2.   treat all persons with courtesy and dignity.

    3.   act, speak, and conduct themselves in a professional manner and maintain a courteous attitude in all contacts with the public.

B.   The Department prohibits and does not tolerate any abuse of law enforcement authority by its members.

C.   The Department is committed to ensuring the actions of its members are lawful, ethical, and serve a proper law enforcement purpose knowing that the conduct or actions of a single Department member may impair public trust and confidence or cast suspicion and disrespect upon the entire Department.

D.   Department members have a duty to report allegations of misconduct, are required to cooperate with misconduct investigations, and will not interfere with or undermine any investigation into allegations of misconduct consistent with the policies outlined in the Department directive titled "**Complaint and Disciplinary Procedures.**"

E.   The Department strictly prohibits its members from:

    1.   engaging in any form of retaliation against Department members or members of the public, as defined by the law or this directive or

    2.   enlisting or directing any other Department member to engage in any form of retaliation against Department members or members of the public, as defined by the law or this directive

F.    For the purposes of this directive, retaliation is defined as any conduct, action, or inaction of a damaging, intimidating, or threatening nature, or any interference, intimidation, coercion, or other adverse action taken against any individual designed to serve as retribution that is intended to punish, cause harm or emotional stress, or improperly influence the individual's actions.

G.    Retaliation can include deliberate action or failure to take action as required of a Department member that involves an improper motive, including but not limited to:

    1.    physical conduct and direct or indirect actions, including arrests, issuance of citations, surveillance, and vehicle or street stops.

    2.    deliberate inaction or denial of Department services including refusing to respond to a call for service, refusing to complete a report, denial of information, or refusing to perform a Department function.

    3.    direct or indirect verbal, written, or electronic communications, including threats, intimidation, or communications meant to offend, ridicule, or embarrass.

    4.    adverse employment actions by the Department or Department supervisors including providing unfavorable assignments, poor evaluations, or lack of consideration for special assignments.

    5.    adverse workplace-related actions by Department members that impair the efficiency, safety, or effectiveness of that member, the Department, or both. including refusing to provide or intentionally delaying a request for assistance or back-up or creating an unsafe or hostile work environment (e.g., bullying, false accusations).

H.    **Specific Prohibitions.** The Department prohibits:

    1.    any and all forms of retaliation against any Department member or any member of the public for:

        a.    engaging in protected lawful exercise of First Amendment rights (e.g., protected speech, lawful demonstrations, observing or filming police activity, or criticizing the Department, a Department member, or a member's conduct).

        **NOTE:**    First Amendment rights are not absolute and are subject to reasonable time, place, and manner restrictions. Further guidance may be found in the Department directive titled "**The First Amendment and Police Actions.**"

        b.    filing a complaint, reporting an allegation of misconduct, or providing information regarding alleged misconduct.

        c.    supporting, participating in, or cooperating with any complaint or misconduct investigation, including providing witness statements, interviews, or evidence.

        d.    reporting criminal activity or calling for or requesting police services.

        e.    participating in any Department activities, including community engagement opportunities, strategic planning, or criminal or administrative investigations.

        f.    providing information to initiate or support any complaint or investigation by the Chicago Office of the Inspector General, Chicago Commission on Human Relations, or the Illinois Department of Human Rights.

    2.    any and all forms of retaliation against any Department member or any member of the public based on any protected class under federal, state, and local law, including a person's race, color, sex, gender identity, age, religion, disability, national origin, ancestry, sexual orientation, marital status, parental status, military status, lawful source of income, credit history, criminal record, or criminal history.

3.     using force, consistent with the Department directive titled "**Use of Force**":

    a.     as punishment or retaliation (e.g., force used to punish or retaliate for fleeing, resisting arrest, or insulting a Department member), or

    b.     in response to a person's lawful exercise of First Amendment rights (e.g., protected speech, lawful demonstrations, observing or filming police activity, or criticizing a Department member or conduct).

4.     any and all forms of retaliation against any Department member for engaging in a collectively bargained right, making or filing internal or external charges or complaints of employment discrimination, or for cooperating with any internal investigation or mediation of a complaint, consistent with the Department directive titled "**Equal Employment Opportunity Policy**."

I.     The Department considers retaliation and acts contributing to retaliation serious misconduct that could potentially include elements of criminal conduct. Therefore, any allegation of a Department member engaging in or supporting acts of retaliation will be thoroughly investigated consistent with the Department directive titled "**Complaint and Disciplinary Procedures.**" Department members may be disciplined up to and including separation from the Department for misconduct, including retaliation and acts contributing to retaliation.

1.     If a supervisor determines that immediate action should be taken during the pendency of the investigation to prevent further retaliation or allegations, he or she will forward that information to the Bureau of Internal Affairs for further consideration.

2.     The Chief, Bureau of Internal Affairs, or designee, will monitor pending retaliation investigations and will forward requests for immediate action to the Legal Affairs Division for further consideration and response. These actions can include, but are not limited to, appropriate changes in assignments, details, or other nondisciplinary measures.

J.     Department members will continue to:

1.     abide by the **Rules and Regulations** of the Chicago Police Department.

2.     be guided by principles as delineated in the Department directive titled "**Vision, Mission Statement and Core Values**," and

3.     adhere to the policies for fair, unbiased, and respectful behavior as outlined in the Department directive titled "**Human Rights and Human Resources**."

## IV.   RESPONSIBILITIES

A.     It is the responsibility of all Department members to prevent retaliation from occurring, identify and stop retaliation when it does occur, take allegations of retaliation seriously, and encourage individuals to come forward without delay to report acts of retaliation.

B.     Department supervisors will monitor the adherence to the policies established in this directive by all subordinates.

C.     When a Department member **directly observes an act of retaliation by a Department member or receives an allegation of retaliation**, the member will immediately notify a Department supervisor, sworn or civilian, and take any appropriate action to stop any continuing acts of retaliation.

1.     Department members need not first report the complaint to their immediate supervisor as delineated in the Department directive titled "**Complaint and Disciplinary Procedures**" and may bring an alleged complaint of retaliation to any Department supervisor, including directly reporting the allegation to a supervisor in the Bureau of Internal Affairs.

2.     The reporting Department member will prepare a To-From-Subject Report, containing the information received, observations made, and any action taken, and submit the report to his

or her unit commanding officer before reporting off duty on the day the member becomes aware of the retaliation.

> **NOTE:** Department members may contact a supervisor in the Bureau of Internal Affairs to request an alternative reporting method to provide a written summary of the alleged incident.

D. When a Department member **believes that he or she has been a victim of retaliation**, the member will immediately notify a Department supervisor, sworn or civilian, and prepare a To-From-Subject Report describing the incident or acts of retaliation.

1. Department members need not first report the complaint to their immediate supervisor as delineated in the Department directive titled "**Complaint and Disciplinary Procedures**" and may bring an alleged complaint of retaliation to any Department supervisor, including directly reporting the allegation to a supervisor in the Bureau of Internal Affairs.

2. The reporting Department member will:

   a. submit the report to his or her unit commanding officer before reporting off duty on the day the member becomes aware of the retaliation, or

   b. contact a supervisor in the Bureau of Internal Affairs to request an alternative reporting method to provide a written summary of the alleged incident.

E. When an act of retaliation by a Department member is directly observed or an allegation is received from any person, the notified supervisor will initiate an investigation, in accordance with the Department directive titled, "**Complaint and Disciplinary Procedures**," including, but not limited to:

1. obtaining a Log Number and preparing an initiation report,

2. ensuring that a To-From-Subject Report is obtained from each Department member having knowledge of the circumstances surrounding the incident prior to the end of his or her tour of duty,

3. notifying the Civilian Office of Police Accountability (COPA) of the alleged misconduct, and

4. notifying the involved member's unit commanding officer, if the notified supervisor is not the member's unit commanding officer obtaining a Log Number.

> **NOTE:** If a supervisor determines that alternative reporting or notification methods are necessary for officer safety or to prevent further retaliation or allegations, he or she will contact a supervisor in the Bureau of Internal Affairs for guidance and alternative methods.

David O. Brown
Superintendent of Police

19-047 JAB/MWK

From: **Watkins, Jacquelin A.** Jacquelin.Watkins@chicagopolice.org
Subject: **Fwd: L/D Status**
Date: **Jun 14, 2023 at 1:20:07 PM**
To: **Jacqueline Watkins** Jacqueline@centrust.org

"The time is always Right to do what is Right." Dr. Martin Luther King Jr.

---

**From:** Padar, James <James.Padar@chicagopolice.org>
**Sent:** Wednesday, June 14, 2023 12:23 PM
**To:** Padar, James <James.Padar@chicagopolice.org>
**Subject:** L/D Status

Good afternoon,

The Office of the First Deputy Superintendent has requested that we provide them an audit of all Full Duty members at 376. As of this writing, the watch system indicates that you are Full Duty. If you believe that this is an error please contact the Medical Services Section (MSS) at 312-745-5000. If your Limited Duty status has expired and you need to submit a new LD packet, please do so immediately. I am providing a blank Limited Duty packet should members require it. Members renewing their Limited Duty status may contact the MSS Limited Duty Liaison PO Marilyn Bishop via her department email or by phone 312 745-5063. At some point in the near future Full Duty members will have their detail to 376 cancelled.

Sgt. Jay Padar
Administrative Sergeant
Alternate Response Section
Chicago Police Department
312-746-9701
PAX 4030

---

This e-mail, and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail (or the person responsible for delivering this document to the intended recipient), you are hereby notified that any dissemination, distribution, printing or copying of this e-mail, and any attachment thereto, is strictly prohibited. If you have received this e-mail in error, please respond to the individual sending the message, and permanently delete the original and any copy of any e-mail and printout thereof.

# EXHIBITS



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Chicago District Office**
230 S Dearborn Street
Chicago, IL 60604
(800) 669-4000
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 03/07/2024

To: Jacqueline A. Watkins
1727 W 107th USA
CHICAGO, IL 60643
Charge No: 440-2024-04416

EEOC Representative and email: JAN BALAN
Investigator
jan.balan@eeoc.gov

---

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 440-2024-04416.

On behalf of the Commission,

Digitally Signed By: Amrith Kaur Aakre
03/07/2024
Amrith Kaur Aakre
District Director

Cc: Chicago Police Department

Please retain this notice for your records.



U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**DETERMINATION AND NOTICE OF RIGHTS**
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 05/07/2024

To: Jacqueline A. Watkins
1525 N. 10th USA
CHICAGO, IL 60640
Charge No: 440-2024-04516

EEOC Representative and email: JAN RANDLE
Investigator
jan.randle@eeoc.gov

**DETERMINATION OF CHARGE**

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claim has no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

**NOTICE OF YOUR RIGHT TO SUE**

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent on this charge under federal law in federal or state court, your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice. Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 440-2024-04516.

On behalf of the Commission,

Digitally Signed By: Aparib Kaur Ashra
03/07/2024
Aparib Kaur Ashra
District Director

Cc: Chicago Police Department.

Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

**IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT**

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

**ATTORNEY REPRESENTATION**

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

**HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS**

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 440-2024-04416 to the

# INFORMATION RELATED TO FILING SUIT UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court within 90 days of the date you receive this Notice. Receipt generally means the date when you (or your representative) opened this email or mail. You should keep a record of the date you received this notice. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to: https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

To make a FOIA request for your charge file, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 440-2024-04410 to the

Enclosure with EEOC Notice of Closure and Rights (01/22)

District Director at Amrith Kaur Aakre, 230 S Dearborn Street , Chicago, IL 60604.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 440-2024-04416 to the District Director at Amrith Kaur Aakre, 230 S Dearborn Street , Chicago, IL 60604.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.